701 A.2d 750

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. ANGEL PEREZ, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 7, 1997—Decided October 23, 1997.

·Before Judges LONG, STERN and KIMMELMAN.

*Ivelisse Torres*, Public Defender, attorney for appellant (*William Welaj*, Designated Counsel, of counsel and on the brief).

*Clifford J. Minor*, Essex County Prosecutor, attorney for respondent (*Raymond W. Hoffman*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Defendant was convicted of distribution, *N.J.S.A.* 2C:35–5b(3), and distribution of cocaine within 1,000 feet of school property,

*N.J.S.A.* 2C:35–7. The former was merged into the latter and defendant received a five-year custodial sentence with a three year period of parole ineligibility. *See State v. Gonzalez,* 123 *N.J.* 462, 588 *A.*2d 816 (1991).

On this appeal defendant argues:

POINT I THE TRIAL COURT ERRED BY PERMITTING THE PROSECUTOR TO REFER TO THE PRETRIAL SILENCE OF THE DEFENDANT'S AUNT AS IMPAIRING HER CREDIBILITY, AND BY FURTHER INSTRUCTING THE JURY THAT SUCH AN INFERENCE WAS PERMISSIBLE.

POINT II THE DEFENDANT IS ENTITLED TO A REMAND FOR A DETERMINATION AS TO THE REASONS FOR THE STATE'S DECISION PROHIBITING PLEA BARGAINING IN THE PRESENT CASE AND WHETHER SUCH A DECISION WAS ARBITRARY AND CAPRICIOUS.

POINT III THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

We find no merit to the first contention and remand for reconsideration of the sentence.

## I.

■ The State's proofs revealed the sale of cocaine to an undercover officer on the evening of February 5, 1996. While the officer was in an unmarked vehicle, co-defendant John Lado asked her if she "was looking for good coke." After she asked for two vials, defendant went into the basement of 237 Garside Street, Newark, and returned with two vials of cocaine which he handed to Lado. Lado then handed them to the officer in exchange for $20. Defendant was thereafter chased by back-up officers into the building at 237 Garside Street and arrested therein.

Defendant's aunt, Aida Peres, testified that on the night in question she went to defendant's house to take defendant's mother to the hospital to visit her husband but that his mother already had left. The aunt therefore remained in the home and watched a movie with defendant and others when the police stormed in, arrested defendant, and searched the upstairs of the house and its basement. According to the witness, defendant "had been in the house the whole time" she was there between the hours of 5:00

p.m. and 6:30 p.m. The police had testified that the sale occurred at approximately 8:10 p.m.

On cross-examination defendant's aunt acknowledged her knowledge of the arrest on February 5, 1996 for distribution of drugs, but never contacted the police or told them that defendant did not possess drugs. On redirect, she testified that the police never told her what charges were being filed against defendant, and that, although she had no "reluctance" to go to the police, she felt no "obligation to go to the police ... and explain that Angel was in the house."

In his summation the prosecutor asked the jury to "[c]onsider the silence for 123 days approximately [since] the date of this arrest [the aunt] never came forward ... never came forward and said My Angel didn't do it" but that "she could speak up" for defendant at the trial.

In his instructions, the judge charged the jury:

Now, you will note that counsel have used the word alibi in their summation. The use of the word alibi should not bear any adverse connotation in the use of such a word. It is a word in general parlance used to describe a proper and legal defense of a person who contends he was somewhere else at the time the crime was committed.

Radio, television and the movies often times put an improper connotation on the word alibi. Please do not permit that to happen in this case. As to the witness Aida Peres, you should understand that she has no civil or moral obligation to communicate any exculpatory information to the authorities.

However, Miss Peres' silence can be and may only be considered by you insofar as it may be relevant to impeach her credibility.

Defendant argues that because his aunt did not know the basis for his arrest or when the alleged crime occurred, and therefore did not know that his presence in the living room at the time she was there was critical, the reference to her pretrial silence was prejudicial error. However, the proofs permitted a finding that she knew of the arrest at the time it was made and knew that defendant was taken to headquarters for selling drugs. In the absence of any testimony that she was counselled by a defense attorney not to communicate with the police, it would have been natural for her to say at the scene—or shortly thereafter—that

she was watching a movie with defendant for some time before the police arrived and, therefore, he could not have committed the offense. Under these circumstances, the reference to her pretrial silence was not inappropriate. *See State v. Silva*, 131 *N.J.* 438, 447–49, 621 *A.*2d 17 (1993).

## II.

■ Defendant argues that he "is entitled to a remand for a determination as to the reasons for the State's decision prohibiting plea bargaining in the present case and whether such a decision was arbitrary and capricious." The State responds that *R.* 3:9–3(a) "explicitly forbids ... judicial involvement in the plea bargaining process" and notes that "a defendant has no legal entitlement to [a] plea bargain, and [that] the decision whether to engage in such bargaining rests with the Prosecutor," citing *State v. Williams*, 277 *N.J.Super.* 40, 46, 648 *A.*2d 1148 (App.Div.1994). The State further notes that our Supreme Court has "directed the Attorney General to promulgate guidelines to assist prosecutorial decision making in the exercise of discretion pursuant to [*N.J.S.A.* 2C:35–12]," and that in *State v. Press*, 278 *N.J.Super.* 589, 651 *A.*2d 1068 (App.Div.), *certif. denied*, 140 *N.J.* 328, 658 *A.*2d 727, *certif. denied*, 140 *N.J.* 329, 658 *A.*2d 729 (1995), *appeal dismissed*, 144 *N.J.* 373, 676 *A.*2d 1089 (1996), we held that there can be a basis for different prosecutorial policies as to plea bargaining in school zone cases in the various counties based upon the resources, limitations and priorities of each county. *But see State v. Gerns*, 145 *N.J.* 216, 231–32, 678 *A.*2d 634 (1996) (disparity issue to be reviewed by Attorney General and addressed by Supreme Court administratively).

It may thus be, as the State now contends, that because less resources are necessary to try undercover school zone cases than school zone cases which do not involve sales to undercover agents, and because it may be easier to prove such cases, there is a rational basis for the prosecutor to distinguish between undercover school zone cases and other school zone cases with respect to

his policy regarding negotiated pleas and the waiver of mandatory ineligibility terms.[1]  However, none of these policy rationales were developed, or even mentioned, by the prosecutor to the trial judge, and *State v. Vasquez*, 129 *N.J.* 189, 609 *A.*2d 29 (1992), requires the prosecutor to state reasons for the "decision to waive or the refusal to waive the parole disqualifier" in each case.  *State v. Vasquez, supra*, 129 *N.J.* at 196, 609 *A.*2d 29; *see also State v. Lagares*, 127 *N.J.* 20, 29, 601 *A.*2d 698 (1992).

In *State v. Vasquez, supra*, the Supreme Court upheld the constitutionality of *N.J.S.A.* 2C:35–12 over a "separation of powers" challenge.  129 *N.J.* at 196–97, 609 *A.*2d 29.  The Court

interpreted [*N.J.S.A.* 2C:35–12] to require prosecutors to adopt guidelines to channel the exercise of prosecutorial discretion.  Prosecutors are further required to state on the record the reasons for their decision to waive or not to waive the parole disqualifier, thereby allowing effective judicial review of the reasons.  When a defendant shows by clear and convincing evidence that the prosecutor's exercise of discretion was arbitrary or capricious, the court is empowered to grant relief.

[*State v. Peters*, 129 *N.J.* 210, 218, 609 *A.*2d 40 (1992).]

The proper issue before us is not whether the courts can compel the prosecutor to negotiate a plea because, while mandatory sentencing after conviction is constitutional, *State v. Des Marets*, 92 *N.J.* 62, 80–81, 455 *A.*2d 1074 (1983), and "[m]andatory sentences usually allow for no judicial discretion," *Vasquez, supra*, 129 *N.J.* at 199, 609 *A.*2d 29, *N.J.S.A.* 2C:35–12 expressly permits a "post-conviction agreement," as well as "negotiated plea" agreements, to reduce or relax the mandatory parole ineligibility term otherwise required under *N.J.S.A.* 2C:35–7.  And although section 12 states that the sentence recommended in the "plea or post-conviction agreement" authorized therein is binding, the Supreme Court in *Vasquez* also concluded that the parole disqualifier in 2C:35–7 "is *not* absolute" because "it can be waived at the

---

[1] It may also be that because of defendant's prior indictable conviction and the fact that he was on probation at the time of this offense a short statement of reasons for the prosecutor's position in this case would suffice.  However, the prosecutor elects to defend his *per se* policy.

discretion of the prosecutor" pursuant to section 12. *Vasquez, supra,* 129 *N.J.* at 199, 609 *A.*2d 29.

Here the co-defendant unsuccessfully moved before trial to dismiss the indictment because of the unique and discriminatory Essex County policy prohibiting plea bargaining in undercover school zone sale cases. There is no dispute that defendant joined the motion which the prosecutor defended by merely stating "it's my job, as an Assistant Prosecutor working underneath the Prosecutor, to enforce that policy." At sentencing defendant again endeavored to attack "the indiscretion of [the] prosecutorial policy" but was precluded from doing so in light of the fact that a verdict was rendered.

While even tougher standards may apply to show arbitrariness once there has been a trial, and an agreement to cooperate may be required, *see State v. Jimenez,* 266 *N.J.Super.* 560, 569–71, 630 *A.*2d 348 (App.Div.1993) (finding no arbitrariness on post-conviction application where defendant was initially sentenced before the guidelines were promulgated), the critical issue before us is whether the prosecutor was arbitrary in refusing to negotiate a sentence recommendation with defendant or to "waive" the mandatory ineligibility term.[2]

Given the fact that "[t]he mandatory term of section 7 is itself not truly mandatory because it can be waived ... as part of a plea agreement or a post-conviction sentencing agreement" under section 12, *Vasquez, supra,* at 201, 609 *A.*2d 29, *Vasquez* and *Peters* require prosecutors, irrespective of any plea agreement, to state

---

[2] *Vasquez, supra,* and *Peters, supra,* dealt with revocation of probation imposed after negotiated pleas which involved waiver of the mandatory minimum. *State v. Shaw,* 131 *N.J.* 1, 618 *A.*2d 294 (1993), dealt with a plea agreement involving an obligation to appear at sentencing and a breach of that condition. *State v. Gonzalez,* 254 *N.J.Super.* 300, 603 *A.*2d 516 (App.Div.1992), also involved a negotiated plea with a recommended parole ineligibility term under section 12. The legal significance of any distinction between sentence recommendations as part of a negotiated plea and a decision not to negotiate at all, and the impact on the issue of arbitrariness of any disparity in plea negotiation policy among counties, may be developed at the remand proceedings.

"reasons for their decision to waive or not to waive the parole disqualifier....," *State v. Peters, supra,* 129 *N.J.* at 218, 609 *A.*2d 40, and give defendants the opportunity to challenge that decision for arbitrariness.

We remand for further proceedings consistent with this opinion.