829 A.2d 1095 (2003)
362 N.J. Super. 554
STATE of New Jersey, Plaintiff-Respondent,
v.
Bienvenido CASILLA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 4, 2003.
Decided August 18, 2003.
*1096 Yvonne Smith Segars, Public Defender, for appellant (James K. Smith, Jr., Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, for respondent (Catherine A. Foddai, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, LEFELT and WINKELSTEIN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
A jury found defendant guilty of purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3a(1), (2); kidnapping, in violation of N.J.S.A. 2C:13-1a and b(2); felony murder, in violation of N.J.S.A. 2C:3a(3); racketeering, in violation of N.J.S.A. 2C:41-2(c); conspiracy to commit racketeering, in violation of N.J.S.A. 2C:41-2(d); conspiracy to commit kidnapping, theft by extortion and possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:5-2; attempted theft by extortion, in violation of N.J.S.A. 2C:5-1; theft by extortion, in violation of N.J.S.A. 2C:20-5(a); terroristic threats, in violation of N.J.S.A. 2C:12-3(a); possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a); two counts of tampering with evidence, in violation of N.J.S.A. 2C:28-6(1); and two counts of hindering apprehension or prosecution, in violation of N.J.S.A. 2C:29-3a(3). The trial court sentenced defendant to a thirty-year term of imprisonment, with *1097 thirty years of parole ineligibility, for purposeful or knowing murder; a consecutive twenty-five year term, subject to the 85% parole ineligibility provision of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for first-degree kidnapping; and a consecutive term of fifteen years for racketeering. The court also imposed concurrent terms of seven years imprisonment for attempted theft by extortion and four years imprisonment for the two counts of hindering apprehension or prosecution. The court merged defendant's other convictions.
The State's version of the offenses committed by defendant was presented through the testimony of one of his confederates, his stepson, Juan Machado, who testified for the State pursuant to a plea bargain. Machado stated that he moved into the Edison home of defendant and his mother in late 1997 and began working for defendant, whose business ostensibly consisted of selling vitamin soda to bodegas in New York City. However, Machado became aware as time went by that defendant was actually involved in drug transactions in the bodegas. Machado also learned that defendant, together with codefendant Tony Mota, was involved in the collection of drug-related debts owed to Colombian drug dealers. Machado acted as a translator for defendant and Mota, who did not speak English, in some of these transactions.
In late November, co-defendants Mota and Machado met with a Colombian drug dealer called "John" in a restaurant in New York City. At that meeting, defendant and Mota agreed to help collect $180,000 that the victim, Eddie Acevedo, owed the Colombian drug dealers, for which they were to receive 30% of the proceeds. John gave them a description of Acevedo's car, a white Montero, his license plate number, and the locations where he might be found.
On the afternoon of December 13, 1997, defendant, Mota, Machado and other persons cut-off Acevedo's car in Manhattan, put him into defendant's car, and drove him to defendant's home in Edison. Machado followed in Acevedo's car.
During the next twenty-four hours, defendant, Mota and Machado made a series of telephone calls to Acevedo's family and friends, demanding payment of a ransom and threatening to kill Acevedo if the money was not paid. The amount of the ransom demands varied from $50,000 to $180,000 and at one point the kidnappers demanded that the ransom be paid partly in cash and partly in cocaine.
Although Acevedo's family and friends were not able to raise the entire amount of the ransom, they were able to raise $23,000. Acevedo's wife offered also to give her car and a Rolex watch to obtain Acevedo's return. Defendant and his confederates agreed to accept this ransom offer. Pursuant to this agreement, Acevedo's wife left the car, money and watch on a Manhattan street, and paged the kidnappers to tell them where the ransom could be picked up. Defendant and Mota retrieved the car from the drop site, removed the money and watch, and abandoned the car in a Manhattan parking garage. Defendant, Machado and Mota split the $23,000 three ways and gave the watch to the Colombian drug dealers.
When Acevedo failed to return home by the morning following payment of the ransom, his wife called the police and reported the kidnapping. The police were able to locate her car in the parking garage the next day. Acevedo's wife and her cousin, Carlos Pacheo, gave the New York City police the telephone numbers they had used to communicate with the kidnappers. In addition, Pacheo gave the police permission to monitor and trace any telephone calls made to his cell phone. Acevedo *1098 subsequently called Pacheo's cell phone number several times, asking for more money and/or cocaine as additional ransom to gain his release.
On December 16th, the Colombian drug dealers told defendant and Mota that the police had recovered the car Acevedo's wife had given them as part of the ransom. They also told Mota that Acevedo was a police informant and should be killed.
Later that day, defendant, Mota and Machado put Acevedo in his car. According to Machado, Mota started to drive Acevedo's car along Route 280, and Machado drove defendant's car about a quarter-mile ahead of him. Defendant sat in the back seat of Acevedo's car, directly behind Acevedo. After Machado saw Acevedo's car first swerve back and forth and then slow down, he stopped and began driving backward on the shoulder. As he approached Acevedo's car, he saw defendant and Mota jump out and start running towards him. Acevedo's car burst into flames as Mota and defendant got into defendant's car. The police subsequently found Acevedo's burning White Montero, his body still inside. An autopsy indicated he had been killed by two gunshots before the fire.
The New Jersey State Police conducted an extensive investigation over the next three-and-a-half months, which included visual surveillance of defendant and a wiretap of his cell phone. This investigation produced substantial evidence of defendant's continuing involvement in drug transactions and the collection of money owed by drug dealers. However, the wiretap did not produce any evidence of defendant's involvement in the kidnapping and murder of Acevedo.
On April 8, 1998, the New Jersey State Police and New York City police arrested defendant in Manhattan. After the police disclosed some of the evidence they had obtained against him, defendant admitted his involvement in drug trafficking and in Acevedo's kidnapping. However, defendant claimed he had objected to killing Acevedo and was not in the car at the time of the murder. According to defendant, Machado had been the driver of Acevedo's car and Mota was behind him in the rear seat. Defendant followed them in his own car. At some point, defendant saw Machado and Mota motioning him to pull over. When he did so, Acevedo's vehicle was engulfed in flames, and Machado and Mota ran to his car and jumped in. Mota told defendant he had shot Acevedo and set him on fire. The trial court denied defendant's pretrial motion to suppress evidence of his statement. Defendant does not challenge the admissibility of his statement on appeal.
At trial, the State presented defendant's inculpatory statement, Machado's testimony and substantial corroborative evidence of defendant's involvement in Acevedo's kidnapping and murder. Pacheo testified that he had conducted a surveillance of the area where Acevedo's wife left her car with the $23,000 and Rolex watch, and that the car used to pick up the ransom was a green Mitsubishi Montero with New Jersey license plates that included the numbers "5" and "3" and the letter "N." At the time of the crime, defendant owned a green Mitsubishi Montero bearing New Jersey license plate number "VF534N." The State also presented telephone records which showed that the cell phone used by the kidnappers to call Acevedo's wife and Pacheo also had been used to call and receive calls from cell phones registered to defendant and Mota.
On appeal, defendant presents the following arguments:
I. THE DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS VIOLATED WHEN THE TRIAL *1099 COURT FAILED TO SUBMIT THE ELEMENT OF JURISDICTION TO THE JURY DESPITE SUBSTANTIAL EVIDENCE THAT MOST OF THE CRIMINAL ACTIVITY TOOK PLACE IN NEW YORK STATE. (Partially Raised Below).
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR ON THE MURDER COUNT WHEN, OVER OBJECTION, IT RESPONDED TO A JURY QUESTION WITH A SUPPLEMENTAL INSTRUCTION THAT DEFENDANT COULD BE FOUND TO BE AN ACCOMPLICE BASED UPON HIS ACTIONS AFTER THE MURDER.
III. BECAUSE THE DEFENDANT WAS INDICTED, TRIED AND CONVICTED OF SECOND DEGREE KIDNAPPING, HIS 25 YEAR SENTENCE IS ILLEGAL, AND HIS JUDGMENT OF CONVICTION MUST BE AMENDED. (Not Raised Below).
IV. BECAUSE THE MONITORING POLICE FAILED TO MAKE REASONABLE EFFORTS TO AVOID INTERCEPTING TELEPHONE CALLS FROM ONE OUT-OF-STATE PHONE TO ANOTHER OUT-OF-STATE PHONE, THE TRIAL COURT SHOULD HAVE GRANTED DEFENDANT'S MOTION TO SUPPRESS THE WIRETAPS.
V. THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING A THIRD CONSECUTIVE SENTENCE FOR RACKETEERING WHEN THAT CONVICTION WAS BASED UPON THE SAME CONDUCT AS THE MURDER AND KIDNAPPING COUNTS.
We reverse defendant's convictions for racketeering and theft by extortion because the trial court failed to instruct the jury concerning the territorial elements of those offenses and remand for a retrial of those charges. In addition, we vacate defendant's conviction for first-degree kidnapping because the court submitted this charge to the jury as second-degree kidnapping and remand for resentencing for the second-degree offense. We affirm defendant's convictions and sentences for murder and hindering apprehension or prosecution.

I
Territorial jurisdiction is an element of every criminal offense. See State v. Schumann, 111 N.J. 470, 474-75, 545 A.2d 168, 170-71 (1988). But because there is generally no dispute concerning territorial jurisdiction, a trial court is required to instruct the jury regarding this element only if there is an issue regarding the relevant facts. See Schumann, supra, 111 N.J. at 475, 545 A.2d at 171; State v. Bragg, 295 N.J.Super. 459, 466-67, 685 A.2d 488, 491-92 (App.Div. 1996).
The Code of Criminal Justice confers broad territorial jurisdiction upon our courts. N.J.S.A. 2C:1-3a provides in pertinent part:
Except as otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:
(1) Either the conduct which is an element of the offense or the result which is such an element occurs within this State;
(2) Conduct occurring outside the State is sufficient under the law of this State to constitute an attempt to commit a crime within the State;

*1100 (3) Conduct occurring outside the State is sufficient under the law of this State to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of such conspiracy occurs within the State....
Under these broad provisions, there was no factual issue concerning New Jersey's jurisdiction over the offenses relating to Acevedo's kidnapping and murder. Although Acevedo was abducted from his car in Manhattan, he was immediately removed to New Jersey and held here against his will until his murder on Route 280 three days later. In addition, most of the telephone calls by defendant and his confederates demanding ransom from Acevedo's family and friends originated in New Jersey. Therefore, it was undisputed that a substantial part of the conduct constituting the elements of murder and kidnapping occurred in New Jersey, which provided the jurisdictional predicate for New Jersey to try these offenses. See State v. Jackson, 289 N.J.Super. 43, 50, 672 A.2d 1254, 1258 (App.Div.1996), certif. denied, 148 N.J. 462, 690 A.2d 609 (1997).
Similarly, it was undisputed that the conduct upon which the charges of hindering apprehension or prosecution were basedthe discarding of the murder weapon and the garments used in the kidnapping and the changing of the license plates on defendant's carall occurred in New Jersey.
However, it is unclear whether the conduct which formed the basis of defendant's conviction for attempted theft by extortion occurred in New Jersey. The State's evidence in support of this charge consisted of wiretap tapes of three conversations between defendant and an "unknown male" in Ohio, which occurred on April 1, 5 and 8, 1998. The Ohio resident owed money, presumably related to drug transactions, which defendant was responsible for collecting. The State Police did not conduct any visual surveillance of defendant on April 5th or 8th and thus the State did not present any evidence that defendant was in New Jersey when he spoke to the person in Ohio on his cell phone on those two days. Although the State Police conducted visual surveillance of defendant on April 1, 1998, which began in Edison and ended in Bloomfield, it is unclear whether defendant was under surveillance when he spoke to the person in Ohio that day. Furthermore, the State Police log of its wiretap of defendant's cell phone does not indicate that defendant made any threat during the course of this conversation. Insofar as that log indicates, the only threat defendant made to the person in Ohio was in the third telephone conversation on April 8th. Consequently, there is a factual issue as to whether any of the conduct upon which the attempted theft by extortion was based occurred in New Jersey. Moreover, the State has not suggested any other basis for this State to assert jurisdiction to try defendant for this offense. Therefore, the issue of territorial jurisdiction should have been submitted to the jury as an element of the offense.
The court's jurisdiction to try defendant for racketeering presents another issue. To prove this offense, the State not only had to establish territorial jurisdiction under N.J.S.A. 2C:1-3 but also that the alleged racketeering enterprise in which defendant participated "affect[ed] trade or commerce." N.J.S.A. 2C:41-2(c) provides:
It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts.
*1101 Defendant asked the court to instruct the jury that to be found guilty of violating this statute, his alleged racketeering enterprise had to have affected trade or commerce "in New Jersey." The trial court made no ruling on the record regarding this request. However, in instructing the jury as to this element, the court simply said that the jury had to find that defendant's racketeering enterprise "engaged in trade or commerce or its activities affected trade or commerce," without indicating that such trade or commerce had to have occurred in New Jersey. Defendant argues that the court's failure to inform the jury that it had to find that defendant's racketeering enterprise affected trade or commerce in New Jersey requires a reversal of his racketeering conviction.
Defendant's argument is supported by the legislative findings and declaration upon which the racketeering statute is based, which make explicit reference to the Legislature's concern about the adverse effects of organized crime on trade or commerce in the State of New Jersey. N.J.S.A. 2C:41-1.1(b) finds that
[d]espite the impressive gains of our law enforcement agencies, organized crime and similar activities in this State are still a highly sophisticated, diversified and widespread activity that annually drains millions of dollars from this State's economy by unlawful conduct and the illegal use of force, fraud and corruption. In recent years, that organized crime and organized criminal type activity has spread to the operation of otherwise legitimate businesses.

[(Emphasis added).]
In addition, N.J.S.A. 2C:41-1.1(c) declares that
[i]n order to safeguard the public interest, effective criminal and civil sanctions are needed to prevent, disrupt and eliminate the infiltration of organized crime type activities which are substantial in nature into the legitimate trade or commerce of this State. It is, therefore, in the public interest to provide that activity which is inimical to the general health, welfare, and prosperity of the State and its inhabitants be made subject to strict civil and criminal sanctions.

[(Emphasis added).]
See also State v. Passante, 225 N.J.Super. 439, 445, 542 A.2d 952, 955 (Law Div.1987) (noting that for the racketeering statute to apply "the target enterprise must have an effect on the commerce of the state").
In addition, we note that a racketeering enterprise which affects interstate commerce is subject to the federal antiracketeering statute, 18 U.S.C.A. §§ 1961-1968, and that a substantial number of other states have anti-racketeering statutes similar to N.J.S.A. 2C:41-1 to -6.2, which proscribe racketeering activity that affects trade or commerce within their borders. See State v. Ball, 141 N.J. 142, 159-60, 661 A.2d 251, 259-60 (1995). Thus, there would be no need for the New Jersey statute to extend to criminal conduct that affects only interstate trade or commerce or trade or commerce in other states. Therefore, we conclude that to convict defendant of racketeering under N.J.S.A. 2C:41-2(c), the State had to show that defendant was employed by or associated with a racketeering enterprise which engaged in trade or commerce in New Jersey or affected trade or commerce in New Jersey.
The State's evidence, consisting not only of Machado's testimony but also the State Police surveillance and wiretapping of defendant, indicated that defendant's racketeering activity was conducted primarily in New York City. Specifically, this evidence established that defendant and Machado visited bodega owners in New York City, ostensibly to sell them vitamin drinks, but rather than pursuing this legitimate business, *1102 defendant negotiated drug deals and demanded money from the bodega owners. The State's evidence also showed that defendant threatened various persons in New York City as well as the unidentified male in Ohio to collect drug-related debts. The State did not show that any of this ongoing criminal activity, other than occasional telephone calls, was conducted in New Jersey. In fact, even the kidnapping and murder of Acevedo apparently related to drug transactions in New York City. In any event, it cannot be determined from the jury's verdict whether it found the kidnapping and murder to be one of the "incidents of racketeering conduct" that established defendant's participation in a "pattern of racketeering conduct." N.J.S.A. 2C:41-1d(1); N.J.S.A. 2C:41-2c. The trial court instructed the jury that it could find such racketeering conduct based on any of defendant's activities between December 1, 1997, and April 8, 1998 involving "[o]btaining money and other objects of value for members and associates of the enterprise[,] ... theft through extortion, threats to inflict bodily injury on or physically confine or restrain individuals who were believed to owe money to members of the enterprise and ... distributing and possessing with the intent to distribute controlled dangerous substances."
Furthermore, even assuming that the jury found that certain of defendant's conduct relating to his racketeering enterprise occurred in New Jersey, it would not automatically follow that such activities affected trade or commerce in New Jersey. Therefore, the court's failure to instruct the jury that it had to find that defendant's racketeering enterprise affected trade or commerce in New Jersey was reversible error. See Schumann, supra, 111 N.J. at 474-75, 545 A.2d at 170-71; Bragg, supra, 295 N.J.Super. at 464-67, 685 A.2d at 490-92.

II
We next consider defendant's argument that the trial court erred in entering a judgment of conviction for first-degree kidnapping because the jury was not instructed regarding one element of this offense that the perpetrator failed to release the victim unharmed in a safe place.
Defendant was indicted for kidnapping, in violation of subsection (a) or (b)(2) of N.J.S.A. 2C:13-1, which provide:
a. A person is guilty of kidnapping if he unlawfully removes another from the place where he is found or if he unlawfully confines another with the purposes of holding that person for ransom or reward or as a shield or hostage.
b. A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period with any of the following purposes:
....
(2) To inflict bodily injury on or to terrorize the victim or another....
N.J.S.A. 2C:13-1c(1) provides in pertinent part that "kidnapping is a crime of the first degree ... [but i]f the actor releases the victim unharmed and in a safe place prior to apprehension, it is a crime of the second degree." Under this provision, to prove first-degree kidnapping the State not only has to establish the elements of kidnapping set forth in N.J.S.A. 2C:13-1a or b but also "prove beyond a reasonable doubt either that the victim was harmed or not released in a safe place prior to apprehension." State v. Federico, 103 N.J. 169, 174, 510 A.2d 1147, 1150 (1986). A guilty verdict for first-degree kidnapping offense cannot stand if the trial court fails to instruct the jury on this element. Id. at 176-77, 510 A.2d at 1151-52.
*1103 The trial court did not instruct the jury regarding the "failed to release unharmed" element of first-degree kidnapping. The court instructed the jury that kidnapping has only two elementsone, unlawful removal of the victim from the place where he was found or unlawful confinement of the victim for a substantial period of time, and two, that the removal or confinement was with the purpose of holding the victim for ransom or reward and/or to inflict bodily injury upon him and/or to terrorize him or another. Similarly, the jury verdict sheet stated:
The two elements of the crime of Kidnapping that the State must prove beyond a reasonable doubt are:
1. That the defendant removed Eriberto Acevedo from the vicinity where he was found or unlawfully confined him for a substantial period of time; and
2. That the removal or confinement was with the purpose of holding him for ransom or reward and/or to inflict bodily injury upon him and/or to terrorize him or another.
Thus, the kidnapping charge submitted to the jury was the second-degree offense.[1] Nevertheless, the court sentenced defendant to a twenty-five year term of imprisonment, evidently conceiving that defendant had been found guilty of first-degree kidnapping. Defendant argues that this is an illegal sentence and that he must be resentenced to a term within the seconddegree range.
The State argues that the jury "implicitly found" the "failed to release unharmed" element of first-degree kidnapping by finding defendant guilty of felony murder during the kidnapping. However, our case law requires the jury to find all the elements of an offense with specific reference to that offense.
In State v. Ragland, 101 N.J. 33, 499 A.2d 1366 (1985) and 105 N.J. 189, 519 A.2d 1361 (1986), the Court held that it was reversible error even to remind a jury that it had already found an element of an offense in connection with another charge against the defendant. Ragland was charged with unlawful possession of a weapon, unlawful possession of a weapon without a permit and possession of a weapon by a convicted felon without a permit. 105 N.J. at 192, 519 A.2d at 1362. The court severed the possession of a weapon by a convicted felon charge to avoid the prejudice in the trial of the other charges that would be caused by introducing evidence of defendant's prior felony conviction, which was an element of the severed charge. Ibid. After the jury found defendant guilty of unlawful possession of a weapon and unlawful possession of a weapon without a permit, the possession of a weapon by a convicted felon charge was tried before the same jury. At the conclusion of the trial on this charge, the court instructed the jury:
If you find that the defendant, Gregory Ragland, was previously convicted for the crime of robbery and that he was in possession of a sawed-off shotgun, as you have indicated ... then you must find him guilty as charged by this Court.
[Id. at 192, 519 A.2d at 1362.]
In concluding that this instruction constituted reversible error, the Court stated:
If that same jury is told, in the immediately following trial of the charge of possession by a convicted felon, that it need not concern itself with the question of possession since it has already found that fact by its prior conviction, the defendant is, in effect, deprived of that trial by jury to which he is entitled, namely, one in which the jury must find *1104 that the State has proved each and every material element of the crime beyond a reasonable doubt....
....
... Obviously this same jury, having found possession beyond a reasonable doubt in the first trial, is strongly inclined to find it once again an hour later when the "new" trial starts on the charge of possession by a convicted felon. It becomes essential, therefore, that the jury be instructed in no uncertain terms to consider anew the evidence previously admitted but to disregard completely its prior verdict. That there is a certain make-believe quality in such an instruction must be conceded since it is most unlikely that the jury will indeed forget its prior verdict. Nevertheless, the defendant is entitled to that instruction for on the "new" trial, the defendant is entitled to the presumption of innocence and, as a consequence of that, to an instruction that each and every material fact that makes up the crime, including obviously the fact of possession, must be proven by the State beyond a reasonable doubt.
[Id. at 193-95, 519 A.2d at 1363-64.]
The State's argument that the trial court properly entered a judgment of conviction for first-degree kidnapping based on the jury's guilty verdict on the charge of felony murder raises substantially the same conceptual problem the Court perceived in Ragland. Although the jury obviously had to have found that Acevedo was not released unharmed in order to return a guilty verdict on the felony murder charge, the jury did not make that finding in connection with the kidnapping charge.
In State v. Smith, 279 N.J.Super. 131, 141-42, 652 A.2d 241, 246-47 (App.Div. 1995), we relied upon a rationale similar to Ragland in concluding that a judgment of conviction for an aggravated form of kidnapping could not be sustained based upon the jury's findings relating to other charges against the defendant. The trial court in Smith had sentenced defendant to life imprisonment, with twenty-five years of parole ineligibility, pursuant to the enhanced sentencing provisions of N.J.S.A. 2C:13-1c(2) that apply to a first-degree kidnapping in which a sexual assault is committed upon a victim under the age of sixteen. Id. at 134, 652 A.2d at 242. The trial court failed to submit to the jury the question whether defendant had committed a sexual assault upon a victim under the age of sixteen. The jury found defendant guilty of first-degree kidnapping, attempted aggravated sexual assault and attempted sexual assault. Id. at 134, 652 A.2d at 243-43. Applying the reasoning of Federico, supra, which held that the "failure to release unharmed" is an element of first-degree kidnapping, we concluded that the commission of a sexual assault upon a victim under sixteen is an element of the aggravated form of kidnapping for which defendant had been sentenced. Id. at 140-41, 652 A.2d at 246. Furthermore, we rejected the State's argument that this element could be found based on the jury's verdict on the sexual assault charges:
The State contends that even if the factors of N.J.S.A. 2C:13-1c(2) are elements, the jury made findings as to each of these factors by finding defendant guilty of first degree kidnapping, second degree attempted aggravated sexual assault, attempted sexual assault, and fourth degree endangering the welfare of a child. While this argument may have some appeal, we are constrained to reject it. "The failure to send an element of a crime to the jury generally should not be considered harmless error." In the present case, defendant requested that the jury decide this issue, but the trial judge refused to charge the jury. We are satisfied that the failure to honor defendant's request for a required *1105 jury charge was prejudicial error. As expressed by the Supreme Court in Federico, "[o]ur respect for the unique role of the jury in criminal cases precludes us from trying to salvage the convictions by tampering with the jury's deliberations."
[Id. at 141-42, 652 A.2d at 246-47 (citations omitted).]
Although defendant did not object to the trial court's failure to instruct the jury regarding the "failure to release unharmed" element of first-degree kidnapping, our Supreme Court has repeatedly indicated that "the failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel." Federico, supra, 103 N.J. at 176, 510 A.2d at 1151; see also State v. Burgess, 154 N.J. 181, 186, 712 A.2d 631, 633 (1998); State v. Afanador, 151 N.J. 41, 56, 697 A.2d 529, 536 (1997). Therefore, we are constrained to conclude that defendant's judgment of conviction for first-degree kidnapping must be vacated.
This conclusion requires us to determine the appropriate disposition of the kidnapping charge. Defendant contends that because he was indicted, tried and found guilty of second-degree kidnapping, the case should be remanded for him to be sentenced for that offense. The State's brief does not address the issue.
We recognize that the Court in Federico declined to "mold" a jury verdict for kidnapping to constitute the second-degree offense where the trial court failed to submit the "failure to release unharmed" element to the jury, on the theory that this would be "tampering with the jury's deliberations[.]" 103 N.J. at 177, 510 A.2d at 1151. However, the Court's recent decisions have taken a more liberal view of the appropriateness of molding jury verdicts in criminal cases. Thus, in State v. Farrad, 164 N.J. 247, 265-66, 753 A.2d 648, 658-59 (2000), the Court stated:
The fact that a trial court must wait until after a finding of guilt has been made before deciding whether multiple convictions are appropriate, N.J.S.A. 2C:1-8a(4), supports our conclusion that the Code contemplates that verdicts may be molded....
The authority to mold the verdict is also based on the trial court's "power to enter a judgment of conviction for a lesser included offense where the jury verdict necessarily constitutes a finding that all the elements of the lesser included offense have been established and where no prejudice to the defendant results." A guilty verdict may be molded to convict on a lesser-included offense even if the jury was not instructed on that offense if "(1) defendant has been given his day in court, (2) all the elements of the lesser included offense are contained in the more serious offense and (3) defendant's guilt of the lesser included offense is implicit in, and part of, the jury verdict."

[Citations omitted.]
In this case, we question whether any "molding" is involved in the entry of a judgment of conviction for second-degree kidnapping. The trial court properly instructed the jury regarding this offense, and the jury returned a valid verdict. Consequently, the entry of a judgment of conviction for second-degree kidnapping would simply memorialize the jury's verdict. We also note that any attempt by the State to retry defendant for first-degree kidnapping after a jury has returned a valid verdict for second-degree kidnapping could present serious double jeopardy issues. See State v. Dively, 92 N.J. 573, 578-87, 458 A.2d 502, 504-510 (1983); State v. Wolf, 46 N.J. 301, 303, 216 A.2d 586, 589 (1966). Therefore, we conclude *1106 that the appropriate disposition in this case is a remand for sentencing for second-degree kidnapping.
[At the direction of the court, the discussion of the other issues in the appeal has been omitted from the published version of the opinion.]
Accordingly, we affirm defendant's convictions and sentences for murder and hindering apprehension or prosecution. We vacate defendant's conviction for first-degree kidnapping and remand to the trial court to sentence defendant for seconddegree kidnapping. We reverse defendant's convictions for racketeering and theft by extortion and remand the case to the trial court for a retrial of those charges.
NOTES
[1] Although not the basis of our decision, we note that the indictment also omitted any reference to the "failed to release unharmed" element of first-degree kidnapping.