837 A.2d 403 (2003)
364 N.J. Super. 504
STATE of New Jersey, Plaintiff-Respondent,
v.
Lorenzo HOLDEN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 2003.
Decided December 9, 2003.
*404 Linda Mehling, Assistant Public Defendant, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Ms. Mehling, of counsel and on the brief).
Kenneth P. Ply, Special Deputy Attorney General, argued the cause for respondent (Donald C. Campolo, Acting Essex County Prosecutor, attorney; Mr. Ply, of counsel and on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and LEFELT.
The opinion of the court was delivered by LEFELT, J.A.D.
Defendant Lorenzo Holden is serving two concurrent eight-year prison terms, with four years of parole ineligibility, for possession with intent to distribute cocaine and possession of a gun while committing a drug offense enumerated in N.J.S.A. 2C:39-4.1. The State appealed, claiming that the trial judge's concurrent sentences violated the mandatory consecutive sentence provision of N.J.S.A. 2C:39-4.1. Defendant cross-appealed, raising three points, arguing that the trial court *405 committed plain error by instructing the jury it could convict defendant of N.J.S.A. 2C:39-4.1 if he possessed a firearm while merely possessing cocaine, which is not one of the offenses enumerated in the statute; the prosecutor's impeachment of a defense witness with pre-trial silence violated defendant's right to a fair trial; and the non-merger and consecutive-sentence provisions of N.J.S.A. 2C:39-4.1 violate the State Constitution.[1] We reject defendant's argument regarding the prosecutor's impeachment of a defense witness, but find merit in defendant's argument that his N.J.S.A. 2C:39-4.1 conviction and sentence must be reversed because of the judge's jury instructions. Consequently, defendant's constitutional issue and the related sentencing issue raised by the State in its appeal are moot.

I.
Because the issues pressed on appeal pertain to testimony by one of defendant's witnesses and the judge's charge and sentence, we need not recount in any detail the facts leading to defendant's arrest and prosecution. It is sufficient to summarize that the charges brought against defendant were developed by Newark police officers who did "a walk through" a three-story multi-family apartment building searching for "any ongoing narcotic activity." The officers claimed to have seen defendant in possession of cocaine in sufficient quantities to warrant an inference of distribution. Upon his arrest, defendant was searched and, according to the police, they discovered in his pants $120 and a .38 revolver with five bullets, three of which were hollow points.
According to defendant and his three witnesses, he possessed neither drugs nor a weapon. Defendant testified the officers never told him at the scene why he was being arrested and arrested him for no reason whatsoever. He learned he was being charged with possession of a handgun at police headquarters, when an officer displayed a gun and said it belonged to defendant. Defendant offered no explanation of why the officers might frame him.
At trial, the State asked the following series of questions, without objection, of defendant's seventeen-year-old witness who had corroborated defendant's testimony about the unjustified arrest:
Q: After this happened did you contact anybody?
A: No, I did not.
Q: Did you complain to anybody?
A: No, I did not.
Q: You didn't contact the Newark police department?
A: No, I did not.
Q: Did you contact internal affairs?
A: No, I did not.
Q: Did you contact your office?
A: No, I did not.
Q: And the police let you go?
A: Yes.
*406 Q: But the police arrested Mr. Holden?
A: Yes.
The prosecutor never mentioned this testimony in his summation. The defense attorney never mentioned this testimony in her summation either, and did not seek to rehabilitate the witness during re-direct.
During the judge's charge to the jury on N.J.S.A. 2C:39-4.1, he explained that the State must first prove that defendant possessed the firearm. Second, the judge told the jury the State had to prove "beyond a reasonable doubt that the defendant was engaged in the violation of certain drug laws and in this case the drug law[s] that they charge is the possession of controlled dangerous substance, possession with intent to distribute the controlled dangerous substance." Immediately thereafter, the judge indicated that to establish these violations, "the State must prove beyond a reasonable doubt the exact same elements that I previously outlined for you with regards to count 1 [which was possession of a controlled dangerous substance] and 2 [which was possession with intent to distribute a controlled dangerous substance] of the indictment." The judge also told the jury that "the State need only prove beyond a reasonable doubt that the defendant violated one of the laws in question, not both." The judge made clear that the jury could convict the defendant if the State proved that defendant "possessed the handgun and that while he possessed it he was in the process of violating one of the 2 referred to lawsdrug lawspossession and possession with intent."
The jury convicted defendant of third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5; third-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b); second-degree possession of a firearm while committing a designated drug offense, N.J.S.A. 2C:39-4.1; and fourth-degree possession of hollow-point bullets, N.J.S.A. 2C:39-3(f). After receiving the jury's verdict, defendant also pled guilty to second-degree possession of a firearm by a convicted felon, N.J.S.A. 2C:39-7(b).
At sentencing, the trial judge merged the convictions for possessing cocaine, possessing a handgun without a permit, and possessing hollow point bullets into the convictions for possession of cocaine with intent to distribute and possession of a firearm while committing a designated drug offense. The judge granted the State's motion for an extended term and then sentenced defendant to an extended term of eight years with four years of parole ineligibility for the third-degree possession of cocaine with intent to distribute conviction and a regular term of eight years with four years of parole ineligibility for the second-degree possession of a firearm while committing a designated drug offense conviction, to be served concurrently. For possessing a firearm by a convicted felon, the judge sentenced defendant to imprisonment for another concurrent eight years.
After the judge imposed the three concurrent eight-year terms, the prosecutor pointed out that N.J.S.A. 2C:39-4.1(d) requires the imposition of a mandatory consecutive term. The trial judge responded: "I'm running it concurrent. If you don't like it, you take an appeal."

II.
We first address defendant's argument that it was plain error for the trial court to allow the prosecutor to utilize pre-trial silence to impeach a defense witness's testimony. As indicated above, after defendant's seventeen-year-old witness testified that he had observed the police arrest *407 defendant for no reason at all, the prosecutor questioned why the witness had not come forward with this information before defendant's trial.
Our Supreme Court, in the context of an alibi witness, has recognized "situations... where the natural response of a person in possession of exculpatory information would be to come forward in order to avoid a mistaken prosecution of a relative or a friend." State v. Silva, 131 N.J. 438, 446, 621 A.2d 17 (1993) (permitting cross-examination of defendant's sister for failing to come forward with alibi information for some five months after defendant was arrested). If such a witness fails to come forward, "when it would have been natural to do so," doubt would be cast on the truth of the witness's trial testimony. Ibid. "A witness's silence in such circumstances is akin to a witness's `prior inconsistent statement,' and, therefore, has probative value." Ibid. (quoting Commonwealth v. Brown, 11 Mass.App.Ct. 288, 416 N.E.2d 218, 224 (Mass.1981)); N.J.R.E. 20; N.J.R.E. 22.
It is also true that there are some situations when silence has no real probative value because it was natural for the witness to not offer exculpatory evidence to the police. Silva, supra, 131 N.J. at 447, 621 A.2d 17. For example, someone might believe that it would be futile to disclose the information they have. Ibid. Or, as another example, a witness might not volunteer information if the witness did not sufficiently understand the charges against defendant to know that he or she had exculpatory information. Ibid. The Court explained that "[i]n [those] circumstances, the witness's failure to speak is perfectly consistent with his trial testimony." Id. at 446-47, 621 A.2d 17.
Because such cross-examination would be appropriate in some circumstances, but not others, a proper foundation must first be "laid by asking whether `the witness was aware of the nature of the charges pending against the defendant, had reason to know he had exculpatory information, had a reasonable motive to act to exonerate the defendant, [and] was familiar with the means to make the information available to law enforcement authorities.'" Id. at 447-48, 621 A.2d 17 (quoting State v. Silva, 252 N.J.Super. 622, 629, 600 A.2d 506 (App.Div.1991), aff'd and remanded by Silva, supra, 131 N.J. 438, 621 A.2d 17 (1993)).
In State v. Perez, 304 N.J.Super. 609, 611, 701 A.2d 750 (App.Div.1997), the State's proofs showed defendant sold cocaine to an undercover officer outside his home. At trial, defendant's aunt testified, as an alibi witness, that she was watching a movie with defendant "when the police stormed in, arrested defendant, and searched" the house, and that defendant was in the house the entire time. Id. at 611-12, 701 A.2d 750. Applying Silva, we permitted cross-examination regarding the alibi witness's pre-trial silence because defendant's aunt claimed to know of the unjust arrest and it would have been natural for her to come forward with this information before her nephew's trial. Id. at 612-13, 701 A.2d 750.
The issue on appeal involves cross-examination of a regular defense witness and not of an alibi witness as in Silva and Perez. This distinction, however, should not make a difference. The rationale of the alibi witness cases can be applied to any defense witness who has exculpatory information. As the Supreme Court indicated in State v. Silva, "`although the fact of a witness' prior silence may be of low probative worth in many cases, we see no sound reason flatly to prohibit this type of cross-examination of a defense witness in all criminal proceedings.'" Silva, supra, 131 N.J. at 447, 621 A.2d 17 (quoting People *408 v. Dawson, 50 N.Y.2d 311, 428 N.Y.S.2d 914, 406 N.E.2d 771, 778 (1980) (citations omitted)).
Here, the State concedes the prosecutor did not ask the proper foundation questions as specifically set forth in Silva, but the State argues that the failure was not plain error. R. 2:10-2. In considering this argument, we note that defendant's counsel did not object to the cross-examination. The failure to object leads us to conclude that counsel "did not in the atmosphere of the trial think [the examination] out of bounds." State v. Johnson, 31 N.J. 489, 511, 158 A.2d 11 (1960).
The cross-examination itself was brief and neither counsel argued the witness's failure-to-come-forward in summation. Defense counsel also did not ask for a jury instruction that defense witnesses had no duty to come forward with exculpatory evidence, as was requested in Silva, supra, 131 N.J. at 442-43, 621 A.2d 17.
In addition, defendant had two other witnesses, besides the witness who was impeached, who offered testimony contradictory to the police officers' testimony. Although one of these witnesses gave a formal statement to defense counsel almost three months after defendant's arrest, the prosecutor did not seek to impeach any of these witnesses with their pretrial silence or the delay in coming forward.
Moreover, defendant admits that several of the foundational elements were established at trial. The seventeen-year-old witness was aware of the charges against defendant, knew he had exculpatory information, and had a reason to exonerate defendant. In addition, we can infer that a seventeen-year-old high school senior would probably know how to report police misconduct. Accordingly, we cannot conclude that the cross-examination as occurred herein was clearly capable of causing an unjust result. R. 2:10-2; State v. Chew, 150 N.J. 30, 82, 695 A.2d 1301 (1997), cert. denied, 528 U.S. 1052, 120 S.Ct. 593, 145 L. Ed.2d 493 (1999).

III.
We move on to discuss the judge's jury charge on N.J.S.A. 2C:39-4.1. The statute provides in pertinent part that a person would be guilty of a second-degree crime for having "in his [or her] possession any firearm while in the course of committing, attempting to commit, or conspiring to commit a violation of [various drug offenses, including N.J.S.A. 2C:35-3, N.J.S.A. 2C:35-4, N.J.S.A. 2C:35-5, N.J.S.A. 2C:35-5.2, N.J.S.A. 2C:35-5.3, N.J.S.A. 2C:35-6, N.J.S.A. 2C:35-7, N.J.S.A. 2C:35-7.1, N.J.S.A. 2C:35-11, or N.J.S.A. 2C:16-1].
The trial judge instructed that defendant could be found guilty of N.J.S.A. 2C:39-4.1, if the jury found that defendant possessed a firearm while in the course of possessing a controlled dangerous substance or possessing a controlled dangerous substance with intent to distribute. Simple possession of a controlled dangerous substance such as cocaine is a violation of N.J.S.A. 2C:35-10(a)(1), and is not one of the drug offenses enumerated in N.J.S.A. 2C:39-4.1. Thus the judge's charge on N.J.S.A. 2C:39-4.1 was erroneous.
The State argues that the error was rendered harmless beyond any reasonable doubt by the jury's verdict finding defendant guilty of possessing cocaine with intent to distribute, in violation of N.J.S.A. 2C:35-5, which is one of the enumerated drug offense in N.J.S.A. 2C:39-4.1. We disagree and are constrained to reverse defendant's conviction and sentence for this offense.
*409 Correct jury charges are essential to a fair trial and failure to provide a clear and correct charge may constitute plain error. E.g., State v. Koskovich, 168 N.J. 448, 507, 776 A.2d 144 (2001). In appropriate situations an omission or mistake in a jury charge may be deemed harmless. State v. Wallace, 158 N.J. 552, 558-60, 730 A.2d 839 (1999). But, because accurate jury instructions are so important, erroneous instructions in criminal cases are virtually always regarded as "poor candidates for rehabilitation under the harmless error philosophy." State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979).
"[P]roper explanation of the elements of a crime is especially crucial to the satisfaction of a criminal defendant's due process rights." State v. Burgess, 154 N.J. 181, 185, 712 A.2d 631 (1998). "[O]ur case law requires the jury to find all the elements of an offense with specific reference to that offense." State v. Casilla, 362 N.J.Super. 554, 567, 829 A.2d 1095 (App.Div.2003). That is why "[w]e have consistently held that incorrect charges on substantive elements of a crime constitute reversible error." State v. Rhett, 127 N.J. 3, 7, 601 A.2d 689 (1992); State v. Martin, 119 N.J. 2, 15, 573 A.2d 1359 (1990)("So critical is the need for accuracy that erroneous instructions on material points are presumed to be reversible error."); State v. Vick, 117 N.J. 288, 289, 566 A.2d 531 (1989) (Erroneous jury instructions on elements of a crime "are almost invariably regarded as prejudicial.").
In State v. Vick, defendant was charged with possession of a weapon without a permit and the trial judge failed to instruct the jury that the State had to prove that the defendant did not have a license to carry the gun. Id. at 290, 566 A.2d 531. We found the error to be harmless because "absence of a permit was inherent in the defense" and the jury must have understood the State's burden of proof. Id. at 290, 566 A.2d 531. The Supreme Court reversed because the judge's error called into question defendant's right to trial by jury, which requires a jury to find the essential elements of the charge even if the omitted finding was obvious. Id. at 291, 566 A.2d 531.
In State v. Federico, 103 N.J. 169, 510 A.2d 1147 (1986), the jury convicted defendant of kidnapping and the judge imposed a sentence for first-degree kidnapping, but the judge never told the jury to determine whether the victim was released unharmed, an element which if found, would reduce first-degree kidnapping to second-degree. Id. at 172-76, 510 A.2d 1147. Because the jury did not deliberate on this element of the crime charged, the Court reversed the defendant's kidnapping conviction. Id. at 176-77, 510 A.2d 1147. Significantly, the State urged the Court to "mold the verdict to constitute a conviction for second-degree kidnapping" because the jury implicitly found the essential elements of that crime. Ibid. The Court refused. It explained that to do so "would force us to speculate about how the jury would have determined the matter if it had been properly charged." Id. at 177, 510 A.2d 1147.
The State relies primarily on Wallace, supra, 158 N.J. at 558-60, 730 A.2d 839, for its contention that the judge's failure in this case was only harmless error. Wallace, while fleeing from the police, committed numerous motor vehicle violations in urban areas at times when people were likely to be in the area. Id. at 554-55, 730 A.2d 839. Defendant was charged with second-degree eluding, under N.J.S.A. 2C:29-2(b), because the State contended that defendant's flight or attempt to elude created "a risk of death or injury to any *410 person." Wallace, supra, 158 N.J. at 558, 730 A.2d 839.
The trial court in Wallace failed to define injury in the jury charge, but the Supreme Court found this error to be harmless. Ibid. The Supreme Court explained that "[t]he case was tried on the theory that because defendant violated our traffic laws, his eluding created a rebuttable inference that the flight or attempt to elude posed a risk of death or injury to any person within the meaning of N.J.S.A. 2C:29-2b." Ibid. The trial court had informed the jury about the rebuttable inference in N.J.S.A. 2C:29-2(b), that one whose driving violated certain traffic laws could be found to have created a "risk of death or injury to any person." Id. at 558-59, 730 A.2d 839. Moreover, the judge instructed the jury on each element of the motor vehicle offenses with which the defendant had been charged. Ibid. The jury found defendant guilty of these motor vehicle offenses. Ibid. Because the jury was properly instructed about the inference and because it found defendant guilty of the various traffic offenses, any error in the charge was cured, and was therefore harmless. Id. at 559-60, 730 A.2d 839.
Here, unlike in Wallace, the jury was not accurately instructed on the elements the State had to prove to establish defendant's guilt of N.J.S.A. 2C:39-4.1. Under the charge as given, defendant could have been convicted of the offense because the jury believed that he possessed a gun while merely possessing cocaine, which is a result that is in direct conflict with the statute.
Even though the jury found defendant guilty of possession with intent to distribute, we have no way of knowing whether the jury would have convicted defendant of possessing the handgun while he possessed the cocaine with intent to distribute. A jury is free in most cases to return verdicts that are internally inconsistent, or to reject evidence that has not been challenged. State v. Ragland, 105 N.J. 189, 195, 519 A.2d 1361 (1986). As we pointed out in Casilla, Ragland "held that it was reversible error even to remind a jury that it had already found an element of an offense in connection with another charge against the defendant." Casilla, supra, 362 N.J.Super. at 568, 829 A.2d 1095; see also State v. Ingenito, 87 N.J. 204, 216-17, 432 A.2d 912 (1981) (applying collateral estoppel affirmatively against a defendant violates defendant's right to trial by jury).
There is "no way to conclude that a trial can be constitutionally fair when the State is not required to prove, over the defendant's objection, the essential elements of the offense charged. The requirement is so basic and so fundamental that it admits of no exception no matter how inconsequential the circumstances." Vick, supra, 117 N.J. at 293, 566 A.2d 531. This is true, even when the defendant does not object at the trial court level, but rather charges plain error on appeal. Federico, supra, 103 N.J. at 176, 510 A.2d 1147 ("[A] mandatory duty exists on the part of the trial judge to instruct the jury as to the fundamental principles of law which control the case .... [a]nd the duty is not affected by the failure of a party to request that it be discharged."); see also Burgess, supra, 154 N.J. at 186, 712 A.2d 631; State v. Afanador, 151 N.J. 41, 56, 697 A.2d 529 (1997). "Failure to instruct the jury as to an element of the crime ordinarily constitutes reversible error." State v. Castaldo, 271 N.J.Super. 254, 258, 638 A.2d 845 (App.Div.1994). The judge "must always charge on the elements of a crime." State v. Jordan, 147 N.J. 409, 423, 688 A.2d 97 (1997).
*411 We acknowledge that had the jury been properly instructed, it would be, on this record, highly unlikely for the jury to find defendant not guilty of violating N.J.S.A. 2C:39-4.1. Nevertheless, in the absence of a clear and accurate charge on the elements of the crime, we are speculating on exactly what the jury might have done had they been properly instructed. We cannot say that the jury deliberated on and found that defendant possessed the weapon while he also possessed cocaine with intent to distribute the drug, the essential elements of N.J.S.A. 2C:39-4.1.
While the jury separately found defendant guilty of possessing cocaine with intent to distribute, it did not make that finding in conjunction with the N.J.S.A. 2C:39-4.1 charge. See Casilla, supra, 362 N.J.Super. at 569, 829 A.2d 1095. We must not speculate or "substitute our interpretation of the verdict for the jury's own." State v. Grey, 147 N.J. 4, 15, 685 A.2d 923 (1996). "Our respect for the unique role of the jury in criminal cases precludes us from trying to salvage the conviction by tampering with the jury's deliberations." Federico, supra, 103 N.J. at 177, 510 A.2d 1147.
Because we cannot definitively say that the jury concluded that the State proved each element of the offense under N.J.S.A. 2C:39-4.1 beyond a reasonable doubt, we are constrained under our existing law to reverse the conviction.

IV.
N.J.S.A. 2C:39-4.1(d) provides that "[n]otwithstanding the provisions of N.J.S.[A.] 2C:1-8 [the merger provision] or any other provision of law, a conviction arising under this section shall not merge with a conviction for a violation of [the enumerated drug offenses] ... referred to in this section nor shall any conviction under those sections merge with a conviction under this section." The statute further requires that "the sentence imposed upon a violation of this section shall be ordered to be served consecutively to that imposed for any conviction for a violation of any of the [enumerated drug offenses]."
Our reversal of defendant's N.J.S.A. 2C:39-4.1 conviction and sentence, however, moots the State's appeal that the trial judge also erred by not making defendant's sentence under this statute consecutive. Defendant's argument that consecutive sentences would not be proper because the mandatory non-waiver and consecutive sentence requirements of N.J.S.A. 2C:39-4.1 are unconstitutional is also moot.
In connection with the consecutive sentence argument, we add only that in this case the trial court imposed concurrent sentences despite the statute's specific directive to impose consecutive sentences. Should any trial court deviate from the clear language of a statute, the judge is professionally compelled to articulate reasons for this action. It is not acceptable to simply instruct objecting litigants "to appeal."
We therefore dismiss the State's appeal as moot, and on defendant's cross-appeal, we remand this matter for a new trial on firearm possession under N.J.S.A. 2C:39-4.1. Defendant's remaining convictions and sentence, including the extended sentence for possession of cocaine with intent to distribute, are unaffected by this decision and are affirmed.
Affirmed in part, reversed in part and remanded for a new trial on N.J.S.A. 2C:39-4.1.
NOTES
[1] Defendant phrased the three points as follows:

Point I. The instruction on count six, which charged defendant with possessing a weapon while committing an enumerated offense, was fatally defective because it erroneously told the jury to convict the defendant if it found that he committed the crime of possession of a controlled dangerous substance, which is not one of the enumerated offenses. (Not raised below.)
Point II. The trial court violated defendant's right to a fair trial by allowing the prosecutor, in violation of State v. Silva, 131 N.J. 438, 621 A.2d 17 (1993), to impeach a defense witness with his pre-trial silence (Not raised below).
Point III. Because the non-merger provision of N.J.S.A. 2C:39-4.1 violates the due process and double jeopardy provisions of the state constitution, the sentence under that count must be vacated.