621 A.2d 17
STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. JOSE SILVA, DEFENDANT–RESPONDENT.

Argued November 9, 1992—Decided March 25, 1993.

*Mark Paul Cronin,* Deputy Attorney General, argued the cause for plaintiff-appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Timothy A. Shafer,* Designated Counsel, argued the cause for defendant-respondent (*Zulima V. Farber,* Public Defender, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns the standards that govern the cross-examination of a witness about recent fabrication of alibi testi-

mony. The specific question is whether the pretrial failure of the witness to volunteer the information to State authorities or investigators allows a jury to draw an inference of recent fabrication. We hold that if a witness appears to know of the charges and would naturally be expected to have come forward with the alibi testimony, the witness may be cross-examined about those circumstances of non-disclosure. In this case, we agree with the Appellate Division that once a notice of alibi had been furnished by defendant's attorney, thereby making the witness available to questioning by prosecution investigators, there is, from the date of notice of alibi to trial, no longer an inconsistency from which to infer fabrication unless the witness refuses to discuss the matter with the prosecution after the notice of alibi.

I

On October 24, 1988, around 8:30 p.m., Jose Silva allegedly attempted to steal, with a handgun, a parked car from a man. The car-jacking was unsuccessful. About one hour later and in the same vicinity, Jose Silva, allegedly with a handgun, stole a parked car from a woman. The police arrested Silva on October 27, 1988. The record indicates that on December 12, 1988, Silva posted bail. The grand jury's indictments on December 22, 1988, partially superseded by an indictment on November 30, 1989, consisted of five counts: two counts of armed robbery or attempted armed robbery, contrary to *N.J.S.A.* 2C:15–1; two counts of possession of a handgun for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4a; and one count of possession of a handgun without a permit, contrary to *N.J.S.A.* 2C:39–5b.

On March 14, 1989, defendant filed a notice of alibi, alerting the State that his sister and her husband were alibi witnesses. Despite her availability, the State did not interview the sister until March 20, 1990, the day defendant's trial commenced. At trial, defendant's sister testified that her brother was with her at her home during the hours in question. She was cross-

examined about her failure to inform the police or prosecutor about the details of the alibi before the March 20th interview. Defense counsel objected to this line of questioning and after a sidebar the prosecutor continued to question the sister on her failure to inform the police. During closing arguments, defense counsel argued that the sister would not have been believed if she had informed the police; the State argued that the alibi had been orchestrated conveniently, emphasizing the sister's failure to inform the police or prosecutor of the alibi. Again, defense counsel objected and after a sidebar the prosecutor continued his comments. Defense counsel requested a jury instruction that an alibi witness has no obligation to come forward. The court agreed; however, the court later failed to instruct the jury that an alibi witness has no duty to inform the police or prosecutor.

The jury convicted defendant of the two armed robbery counts and the two counts of possession of a handgun for an unlawful purpose. The court dismissed the count charging defendant with possession of a handgun without a permit. The court sentenced defendant on each of the robbery counts to fifteen years with a minimum parole eligibility term of seven years and on each of the unlawful possession counts to seven years with a minimum parole eligibility term of three-and-a-half years, all terms to run concurrently.

The Appellate Division reversed the convictions, 252 *N.J.Super.* 622, 600 *A.*2d 506 (1991). The court ruled that the

prosecution may cross-examine an alibi witness on the subject of pretrial silence (and may comment in summation), but only after demonstrating to the trial judge's satisfaction that the witness was aware of the nature of the charges pending against the defendant, had reason to know he had exculpatory information, had a reasonable motive to act to exonerate the defendant, was familiar with the means to make the information available to law enforcement authorities, and was not silent as the result of the advice of defense counsel.
[*Id.* at 629–30, 600 *A.*2d 506.]

The court noted that when a defendant furnishes an alibi notice such action "terminates any arguable unnaturalness of an alibi witness's failure to come forward with his informa-

tion." *Id.* at 631, 600 *A.*2d 506. Thus, the court held "that the prosecution may not question or comment on an alibi witness's pretrial silence during any period after filing of defendant's alibi notice containing the witness's name and address." *Ibid.* The concurring opinion would go further and allow only in the rarest of circumstances, that an alibi witness be questioned on his or her failure to inform the police. *Id.* at 634, 600 *A.*2d 506 (Stein, J.A.D., concurring). We granted certification, 130 *N.J.* 9, 611 *A.*2d 649 (1992).

## II

Cross-examination is "the 'greatest legal engine ever invented for the discovery of truth.' " *California v. Green,* 399 *U.S.* 149, 158, 90 *S.Ct.* 1930, 1935, 26 *L.Ed.*2d 489, 497 (1970) (quoting 5 *Wigmore on Evidence* § 1367, at 32 (Chadbourn rev. 1974)). Courts have a broad discretion in determining the scope of cross-examination. *State v. Siegler,* 12 *N.J.* 520, 526–27, 97 *A.*2d 469 (1953). An attorney may not, however, cross-examine a witness about any subject. The law places limits on cross-examination for reasons of both practicality and logic. *See* 1 *McCormick on Evidence,* § 49, at 182 (Strong 4th ed. 1992) (stating that "consideration of confusion of the issues, misleading the jury, undue consumption of time, and unfair prejudice" restricts cross-examination through the use of extrinsic evidence). Thus, the law recognizes five acceptable modes of attack upon the credibility of a witness: (1) prior inconsistent statements, (2) partiality, (3) defect of character, (4) defect of capacity of the witness to observe, remember, or recount matters, and (5) proof by others that material facts are otherwise than as testified to by the witness under attack. *Id.,* § 33, at 111–12. This case involves impeachment of an alibi witness through prior inconsistent statements.

## III

New Jersey *Rules of Evidence* provide that prior inconsistent statements may be used to impeach the credibility of a

witness. See *Evidence Rule* 20; *Evidence Rule* 22. "[A]n alibi witness, like any other witness, may be cross-examined with a view to demonstrating the improbability or even fabrication of his testimony." *State v. Bryant*, 202 *Conn.* 676, 523 *A.*2d 451, 466 (Conn.1987). When a witness's prior statement "fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent" to be used for impeachment purposes. 1 *McCormick on Evidence*, *supra*, § 34, at 115. "As a preliminary matter, however, the court must be persuaded that the statements are indeed inconsistent." *United States v. Hale*, 422 *U.S.* 171, 176, 95 *S.Ct.* 2133, 2136, 45 *L.Ed.*2d 99, 104 (1975) (citing 3A *Wigmore on Evidence*, § 1040 (Chadbourn rev. 1970)). In the case of silence, what is the statement that is inconsistent with the trial testimony?

It seems to be assumed that a person accused of a crime will volunteer evidence of innocence. Hence, when a person does not do so, it is thought natural to expect that we may question on that subject. As the Supreme Court stated:

> In most circumstances silence is so ambiguous that it is of little probative force. * * * Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation.
>
> [*Hale, supra*, 422 *U.S.* at 176, 95 *S.Ct.* at 2136, 45 *L.Ed.*2d at 104.]

It is only the constitutional privilege against self-incrimination that guarantees the accused that no inference may be drawn from the exercise of the right to remain silent. *Doyle v. Ohio*, 426 *U.S.* 610, 96 *S.Ct.* 2240, 49 *L.Ed.*2d 91 (1976).

■ We have concluded that once a defendant chooses to take the stand in his or her own defense pre-arrest silence has a bearing on the credibility of the defendant. *State v. Brown & Emm*, 118 *N.J.* 595, 613, 573 *A.*2d 886 (1990). In this case we stated that

> [i]f it can be inferred by the fact-finder that a reasonable person situated as the defendant, prior to arrest, would naturally have come forward and mentioned his or her involvement in the criminal episode, particularly when this is assessed

against the defendant's apparent exculpatory testimony, then the failure to have done so has sufficient probative worth bearing on defendant's credibility for purposes of impeachment.

[*Id.* at 613-14, 573 *A.*2d 886.]

This case tests the measure of the soundness of the inference by a fact-finder that a reasonable alibi witness would naturally come forward to mention his or her exculpatory evidence and that the failure to have done so has sufficient probative worth bearing on the alibi witness's credibility for purposes of impeachment. We know that there is no duty to come forward with an alibi. *Bryant, supra,* 523 *A.*2d at 465; *Commonwealth v. Brown,* 11 *Mass.App.Ct.* 288, 416 *N.E.*2d 218, 224 (1981); *People v. Brown,* 62 *A.D.*2d 715, 405 *N.Y.S.*2d 691, 695 (1978), *aff'd,* 48 *N.Y.*2d 921, 425 *N.Y.S.*2d 54, 401 *N.E.*2d 177 (1979). Still, as one court stated:

There are many situations, however, where the natural response of a person in possession of exculpatory information would be to come forward in order to avoid a mistaken prosecution of a relative or a friend. In such situations, the failure of a witness to offer the information when it would have been natural to do so might well cast doubt on the veracity of the witness' trial testimony. A witness's silence in such circumstances is akin to a witness's "prior inconsistent statement," and, therefore, has probative value.

[*Commonwealth v. Brown, supra,* 416 *N.E.*2d at 224 (footnote and citation omitted).]

For example, a mother whose son is wrongly arrested in her home on charges of an armed robbery alleged to have occurred at 4:00 p.m. that same day would likely tell the police if her son had been in her home at that time and is unjustly accused. There are many such circumstances in which it would be natural for an alibi witness to communicate with the police regarding a false accusation. The witness "may have no personal stake in remaining silent and * * * may very well have a personal interest in speaking up in order to aid the defendant." *People v. Dawson,* 50 *N.Y.*2d 311, 428 *N.Y.S.*2d 914, 921, 406 *N.E.*2d 771, 777 (1980).

On the other hand,

[t]here may be other situations * * * where it would not be natural for a witness to offer exculpatory evidence to law enforcement officials. In these

circumstances, the witness's failure to speak is perfectly consistent with his trial testimony. Some individuals, for example, may believe that the disclosure of their information to the police would be futile. * * * In other situations, the witness may not be aware of the charges against the defendant with sufficient detail to know that he possesses important exculpatory information.

[*Commonwealth v. Brown, supra*, 416 *N.E.*2d at 224.]

As situations differ, the probative value of silence will differ as well. Thus we agree with the *Dawson* court that "although the fact of a witness' prior silence may be of low probative worth in many cases, we see no sound reason flatly to prohibit this type of cross-examination of a defense witness in all criminal proceedings." 428 *N.Y.S.*2d at 921–22, 406 *N.E.*2d at 778 (citations omitted).

In *State v. Plowden*, 126 *N.J.Super.* 228, 313 *A.*2d 802 (App.Div.), *certif. denied*, 64 *N.J.* 504, 317 *A.*2d 717 (1974), the court held that to cross-examine the sister of a defendant with respect to her failure to come forward with an alibi for her brother was proper. When an alibi witness has a close relationship with the accused, as with the mother/son relationship in our example or the brother/sister relationship in *Plowden* and in this case, a jury can infer that the alibi witness's natural conduct would be to report the alibi to the authorities. The expectation that an alibi witness would communicate with the authorities is higher when the close relative is in jail. In such circumstances, an alibi witness's silence by failing to communicate with the authorities can be considered an inconsistent statement subject to cross-examination designed to reveal fabrication.

We thus agree with the majority of the Appellate Division that when a court finds that "silence may reasonably be viewed as inconsistent with [the witness's] testimony," *State v. Marshall*, 260 *N.J.Super.* 591, 598, 617 *A.*2d 302 (App.Div. 1992), the rules of evidence allow cross-examination on the prior inconsistency, and that a proper foundation is laid by asking whether

the witness was aware of the nature of the charges pending against the defendant, had reason to know he had exculpatory information, had a reason-

able motive to act to exonerate the defendant, [and] was familiar with the means to make the information available to law enforcement authorities * * *.

[252 *N.J.Super.* at 629, 600 *A.*2d 506; *see also Dawson, supra,* 428 *N.Y.S.*2d at 921 n. 4, 406 *N.E.*2d at 777 n. 4 (stating same).] [1]

The concurring opinion of the Appellate Division concludes that it would be natural for a close friend or relative to communicate with the suspect's lawyer instead of the authorities, *id.* 252 *N.J.Super.* at 632, 600 *A.*2d 506, and that "only [in] the rarest of circumstances should jurors be permitted to hear that a witness did not report an alibi." *Id.* at 634, 600 *A.*2d 506. We do not agree. The circumstances of every case as revealed during the laying of a proper foundation will reveal what is reasonably natural for an alibi witness to do. When an alibi witness has a close relationship with the accused, a jury can infer that the alibi witness's natural conduct would be to report the alibi to the authorities. However, when a witness attempts to speak to the authorities and the effort is rebuffed, it might not be natural for the witness to try to speak to the authorities again, and the subsequent silence would not be an inconsistent statement. These and all other questions of the admissibility or relevance of a line of questioning are reposed in the sound discretion of trial courts. The *Dawson /Brown* doctrine has rarely been invoked outside of the alibi-witness setting. For example, in child-sexual-abuse cases, the issue of delayed disclosure is routinely handled. (In such cases, the issue more often arises as to the use of prior consistent statements to bolster credibility.) The early disclosure of alibi testimony is consid-

---

[1] We do not agree that cross-examination cannot continue if the silence was "the result of the advice of defense counsel." *Silva, supra,* 252 *N.J.Super.* at 629–30, 600 *A.*2d 506; *see also Dawson, supra,* 428 *N.Y.S.*2d at 922, 406 *N.E.*2d at 778 (stating same). A witness (unlike a defendant) has no right to refuse to give information to official investigators. Such advice of counsel may help to explain the conduct but does not necessarily remove the inconsistency when it would otherwise be natural for the alibi witness to inform the State's investigators. Thus, the advice of counsel may be a circumstance that would lead the court to limit, rather than discontinue, cross-examination.

ered important enough to require pretrial disclosure by a defendant. *R.* 3:11–1.

During routine cross-examination, a proper foundation will either exist or not depending on the circumstances of each case and the alibi witness's answers to the questions. Defense counsel can object to any question or argument that fails to follow from that foundation. The scope of cross-examination rests in the discretion of the trial court. Trial court rulings on any further questioning or argument will be sustained in the absence of finding "such abuse of that discretion as would justify a finding of prejudicial error." *State v. Petillo*, 61 *N.J.* 165, 169, 293 *A.*2d 649 (1972), *cert. denied*, 410 *U.S.* 945, 93 *S.Ct.* 1393, 35 *L.Ed.*2d 611 (1973). If there is no objection to the cross-examination, absent a sustainable claim of ineffective assistance of counsel, there should be no appealable error.

Counsel are aware that all trial or pretrial strategy comes with a price. "A defendant [or prosecutor] must expect that * * * [his or her] witnesses will be tested on cross-examination, under the accepted rules of evidence, just as any other witness." *People v. Davis*, 156 *Cal.App.*3d 920, 203 *Cal.Rptr.* 338, 344 (1984) (citing *McLemore v. State*, 87 *Wis.*2d 739, 275 *N.W.*2d 692, 701 (1979)). For example a witness who refuses to discuss the case with State investigators can be cross-examined about the refusal. *People v. Van Zile*, 48 *Ill.App.*3d 972, 6 *Ill.Dec.* 747, 363 *N.E.*2d 429, 432–34 (1977). However, "a prior consistent statement may be admitted in evidence under *Evid.R.* 20 to support the credibility of a witness in order to rebut an expressed or implied charge against him of recent fabrication." *State v. Johnson*, 235 *N.J.Super.* 547, 555, 563 *A.*2d 851 (App.Div.), *certif. denied*, 118 *N.J.* 214, 570 *A.*2d 971 (1989). A prosecutor who cross-examines a witness about an unwillingness to discuss the case with the State's investigator will have to accept the introduction of prior consis-

tent statements made to others that rehabilitate the original testimony.

## IV

Applying those principles to this case, the prosecutor's questions and arguments exceeded the foundation established. Defendant provided the notice of alibi to the prosecutor a year before trial. "The purpose of a notice of alibi is 'to avoid surprise at trial by the sudden introduction of a factual claim [that] cannot be investigated unless the trial is recessed to that end.'" *State v. Irving*, 114 *N.J.* 427, 433, 555 *A.*2d 575 (1989) (quoting *State v. Garvin*, 44 *N.J.* 268, 272–73, 208 *A.*2d 402 (1965)). A notice of alibi is testimonial in character and can be referred to during cross-examination or rehabilitation of the defendant's credibility. *Id.* 114 *N.J.* at 437, 555 *A.*2d 575. There was no silence or inconsistent statement by the alibi witness from that date forward since the State was notified of her testimony, albeit through the statement of the defendant. Although the prosecutor might have established a proper foundation for the silence before the alibi notice, the prosecutor's questioning of the alibi witness appeared to cover both the silence before and after the notice of alibi.

Proper cross-examination would cover the sister's silence, after a proper foundation, between arrest and alibi notice, especially considering defendant's forty-seven day period in jail prior to posting bail. The record does not disclose when the sister communicated with defense counsel, whether such communication occurred prior to defendant's posting of bail or indictment, and whether defendant informed the State's investigators of his potential alibi. Those issues will be relevant to the trial court on remand in evaluating any showing of inconsistency and any proposed rehabilitation by defense counsel involving the alibi witness's silence between defendant's arrest and the alibi notice.

 Defendant also claims error in the court's failure to instruct the jury that the alibi witness has no duty to provide the police or prosecutor with the exculpatory evidence. The matter arises as a matter of plain error and would not of itself merit reversal. In *State v. Brown & Emm,* we acknowledged the proper scope of instructions given to the jury involving an alibi witness who was also a defendant. The jury instructions were:

> [Y]ou have ... heard a great deal about when Mr. Emm first came forward with his account of what happened. Let me first make it absolutely clear to you that Mr. Emm had no legal obligation to provide an account at any time and there may be many explanations for not doing so. * * * The evidence concerning when he came forward and why and whatever facts you find as to that from the credible evidence, on this matter, may be considered by you only insofar as you determine it affects the credibility of what he has told you occurred.
>
> [118 *N.J.* at 616 n. 3, 573 *A.*2d 886.]

A similar instruction stating that an alibi witness has no duty to communicate with the authorities and that the witness's silence is relevant only for impeachment of credibility is appropriate in these circumstances as well.

We affirm the Appellate Division judgment and remand for further proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.