**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2342-15T1

GLOUCESTER COUNTY IMPROVEMENT
AUTHORITY,

  Plaintiff-Respondent,

v.

GALLENTHIN REALTY DEVELOPMENT,
INC.,

  Defendant-Appellant,

and

STATE OF NEW JERSEY, BOROUGH
OF PAULSBORO, COLONIAL PIPELINE
CO., ATLANTIC CITY ELECTRIC
CO., and PAULSBORO ACQUISITION
CORP.,

  Defendants.

_____

    Argued October 23, 2017 — Decided  July 24, 2018

    Before Judges Sabatino, Ostrer and Rose.

    On appeal from Superior Court of New Jersey,
    Law Division, Burlington County, Docket No.
    L-2718-10.

    Peter  H.  Wegener  argued  the  cause  for
    appellant  (Bathgate,  Wegener  &  Wolf,  PC,
    attorneys;  Peter H. Wegener, on the briefs).

James M. Graziano argued the cause for respondent (Archer & Greiner, PC, attorneys; James M. Graziano, on the brief).

PER CURIAM

In this condemnation case, defendant Gallenthin Realty Development (GRD) appeals from the jury verdict establishing $750,000 as just compensation for the April 23, 2010 taking by defendant Gloucester County Improvement Authority (Authority) of roughly three acres of GRD's sixty-three-acre property in Paulsboro.

GRD's sole point on appeal pertains to an evidentiary ruling. GRD sought to confront a testifying Authority expert with a document which, GRD argued, tended to establish that the property's proximity to a rail line and navigable water enhanced its value. GRD also intended to introduce the document into evidence. The court sustained the Authority's objection and barred GRD's use of the document. The court also denied GRD's motion for a new trial, in which GRD revisited the issue. Applying our deferential standard of review, we reject GRD's argument that the trial court erred in its evidentiary ruling, and we affirm the final judgment.

I.

We previously affirmed the trial court's order approving the Authority's power to condemn the property, and appointing commissioners to fix compensation. Gloucester Cnty. Improvement

Auth. v. Gallenthin Realty Dev., Inc., No. A-2214-10 (App. Div. Aug. 8, 2012). The matter proceeded to a jury trial after GRD appealed from the Commissioners' report.

This was only the most recent round in governmental efforts to obtain GRD's property. The Borough of Paulsboro previously designated all of GRD's property as an "area in need of redevelopment" pursuant to N.J.S.A. 40A:12A-5, which would have made the entire property subject to condemnation. Zoned for a marine industrial business park, the property is mostly wetlands. Slightly less than one third, at the northern end, consists of developable land. The Mantua Creek, which empties at its northern end into the Delaware River, lies on the property's eastern edge. A rail spur runs along the western side of the property, although it was uncertain whether it could carry rail traffic because it was unclear whether it satisfied Conrail standards. To the north of the site is the planned Paulsboro Port redevelopment property, which includes land once used by British Petroleum (BP) as a packaging site, and land owned by Dow/Essex Chemical. That property is bounded to the north by the Delaware River, and to the east by the Mantua Creek.

In 2003, the Borough joined Gallenthin's property in its redevelopment plans with the larger property to the north, which had already been designated an area in need of redevelopment.

Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344, 350-54 (2007). However, GRD appealed, and the Supreme Court invalidated the designation. Id. at 373.

After the Supreme Court's decision, the Authority sought the more limited taking at issue here. It condemned 3.395 acres in fee simple, 0.256 acres in permanent easements, and a 1.73 acre temporary construction easement. Of the 3.395 acres, slightly over one acre was utilized for a new roadway, to link the site to the north with a connection to I-295 to the south. The roadway entered Gallenthin's property by a bridge over the Mantua Creek, and then followed a northerly and then north-westerly path across the uplands portion of GRD's property. Slightly over two acres of the condemned property consists of a triangle of land to the north of the road, bounded to the east by the Mantua Creek, but accessible to the rest of Gallenthin's property by the embankment along the creek.

The main point of contention at trial was the highest and best use of the property. The Authority's expert, Jerome McHale, testified that just compensation was $489,400 since the highest and best use was future industrial. The Authority's witnesses depreciated the value of the parcel's access to the Mantua Creek, contending it was too shallow and narrow to accommodate vessels that would support a commercially viable marine-related use.

McHale noted there were many waterfront properties in the area that did not utilize water access. Authority witnesses also contended that utilizing the rail line for an intermodal transportation facility on GRD's property would be uneconomical. McHale asserted there were many industrial properties with rail lines in the area that were unused because trucking was preferable. McHale asserted that neither the existing rail line, nor the property's location on the Mantua Creek, enhanced the property's value.

GRD took the opposite position. George A. Gallenthin, III, an owner of GRD, contended that the creek could accommodate barges, before the bridge destroyed the feasibility of doing so, in part because it left only twenty-five feet of clearance between the creek and the bridge bed. He also testified that the rail spur had been repaired and utilized by a neighboring landowner in recent years. GRD argued that its proximity to the Paulsboro Port made it a desirable location for ancillary port-related uses.

GRD's appraiser, Anthony Graziano, testified that just compensation was $2,123,000. He explained that the highest and best use of the property involved the water access and the rail line. Specifically, he opined that the property could be used for a dredge transfer station or marine cargo terminal. Graziano

opined that rail access and water access each enhanced the value of industrial property by fifteen percent.

During McHale's redirect examination, he recounted that GRD had not commercially used its waterfront since 1964. He asserted, "[I]n 2010 and as of today [the trial was in September 2015] there is no demand for this type of waterfront property. There[] [are] other old facilities out there . . . all along the waterfront that are available if you want to put them to waterfront use. There's just no demand for that."

On recross-examination, GRD attempted to rebut McHale's assertion about the lack of demand. GRD's counsel inquired about Paulsboro's effort to add GRD's property to the redevelopment area that included the Paulsboro Port. He asked, "And you're aware that back in 2005, the Borough of Paulsboro had started a redevelopment project for the Paulsboro port. Right?" McHale answered, "They did, right, about ten years ago." Counsel then followed, "Right. And the Borough of Paulsboro wanted this property . . . " At that point, the Authority's counsel objected.

An extended colloquy followed. GRD's counsel stated that he intended to confront McHale with a 2005 "certification" from former Paulsboro Mayor John J. Burzichelli, which was filed by the Borough of Paulsboro in the first litigation to support the area-in-need-

of-redevelopment designation.[1]  GRD's counsel argued that McHale

had opened the door to proof that there was demand for the property

for waterfront use; and that the Burzichelli certification

demonstrated such demand.  Counsel also stated his desire to

introduce the certification into evidence.  He proffered the

certification, which stated:

> 2.   The Borough has signed a Ground Lease
> with BP Products North America in order to
> build a marine terminal and distribution
> center along the Delaware River.  The Borough
> is completing negotiations with the South
> Jersey Port Corporation for construction and
> operation of a marine terminal.
>
> 3.   Independent studies have concluded the
> development will have an estimated total
> impact of over $300 Million Dollars and will
> create thousands of new jobs in the
> municipality. The project will revitalize the
> entire community, strengthen the local
> economy, and draw new business to the
> surrounding area.
>
> 4.   The Gallenthin's property is part of the
> overall redevelopment area and essential to
> the overall redevelopment of the area.
>
> [(Emphasis added).]

GRD contended that Burzichelli's statement in paragraph 4

meant the property was essential to a port project, which in turn

---

[1] Although denominated a "certification," Burzichelli did not comply with Rule 1:4-4(b).  Instead, he certified that his statements were "true to the best of my knowledge, information and belief . . . ."

meant it was essential because of its water and rail access. GRD cited references in Gallenthin Realty Dev., Inc. to studies, preceding designation of GRD's property, which noted that the property was "not fully productive" as evidenced by the fact that it was vacant and unimproved, and the rail line was underutilized. See 191 N.J. at 352. That study made no mention of use of the property for access to the planned port project to the north. Ibid. GRD contended Paulsboro, in 2005, did not want the GRD property included in the redevelopment area in order to provide road access to the Paulsboro Port; GRD noted that a study at the time instead recommended a vehicle route north of the GRD property.

The Authority responded that Burzichelli's certification said nothing about why Paulsboro believed the GRD property was essential. In particular, it failed to say the property was essential because of its access to Mantua Creek. The Authority noted that the redevelopment area already had direct access to the Delaware River. Nor did the certification state that the property was essential because the rail spur passed through it. The Authority noted that GRD had the opportunity to call Burzichelli as a witness, but did not.

The court sustained the objection, explaining: "I don't think there's enough before me to say that Paulsboro wanted it for rail and water, as opposed for some ancillary reason. Integral to the

port can be a lot of things." The judge noted that Paulsboro's successor in interest, the Authority, wanted GRD land for a bridge and road, "I need something more to show that [the desired objective in] 2005 was for the rail or water . . . ." Noting that the Authority's objection was based on relevance grounds, the judge disavowed reliance on N.J.R.E. 403, stating, "There's no prejudice. This isn't a[n] [N.J.R.E.] 403 issue."

In denying GRD's motion for a new trial, the court amplified the reasons for its ruling, stating that the document would lead to speculation by the jury. "I think it's still very, very speculative and it doesn't talk in terms of what the Borough was contemplating its use for." The court also indicated it was concerned about the hearsay nature of the certification, stating, "I was worried about Burzichelli not being able to be cross-examined on it when he could have been available to testify as to what the plans were . . . ."

## II.

GRD's sole point on appeal is that the court erred in (1) barring GRD from confronting McHale with the Burzichelli certification on re-cross-examination; and (2) barring GRD from introducing the certification into evidence. GRD and the Authority renew and amplify arguments they presented to the trial court.

We are guided by a deferential standard of review. "The trial court is granted broad discretion in determining both the relevance of the evidence to be presented and whether its probative value is substantially outweighed by its prejudicial nature." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999). Likewise, a trial court exercises "broad discretion in determining the scope of cross-examination." Manata v. Pereira, 436 N.J. Super. 330, 343 (App. Div. 2014) (quoting State v. Silva, 131 N.J. 438, 444 (1993)). In applying this standard, an appellate court may not "substitute its judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). There is no error if there is adequate, substantial, and credible evidence in the record to support the decision. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384 (2010).

We view the court's exclusion of Burzichelli's certification as a ruling on relevance. "'Relevant evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. In determining relevance, the trial judge should focus on "the logical connection between the proffered evidence and a fact in issue, i.e., whether the thing sought to be established is more

10

logical with the evidence than without it." <u>State v. Hutchins</u>, 241 N.J. Super. 353, 358 (App. Div. 1990).

The test for relevance is broad and generally favors admissibility. <u>State v. Deatore</u>, 70 N.J. 100, 116 (1976). "The burden of establishing this connection is not onerous: 'if the evidence makes a desired inference more probable than it would be if the evidence were not admitted, then the required logical connection has been satisfied.'" <u>State v. Garrison</u>, 228 N.J. 182, 195 (2017) (quoting <u>State v. Williams</u>, 190 N.J. 114, 123 (2007)).

We have no doubt that proof of demand for the GRD property because of its water or rail access would pertain to "a fact of consequence" in the case. A key issue at trial was whether those two attributes of the property enhanced its value, or were inconsequential. The crux of this appeal is whether the Burzichelli certification made an inference of such demand — by Paulsboro in particular — more probable than it would be absent the document.

We recognize the trial court did not recite the standard for assessing relevance found in N.J.R.E. 401. The court addressed whether the evidence was sufficient to enable it to conclude — as opposed to a jury — that Paulsboro wanted the property for its water and rail access. However, we are satisfied that the court nonetheless applied the essential test of N.J.R.E. 401 — whether

the evidence tended to establish GRD's proposition that Paulsboro wanted the property in 2005 for its water and rail access. Applying our deferential standard of review, we uphold the trial court's assessment that the certification did not support such an inference.

GRD's proposed use of the certification required multiple inferential steps. First, the jury would have had to infer that because Paulsboro deemed the property essential to the redevelopment area, Paulsboro specifically deemed the property essential to the port project to the north. Alternatively, Paulsboro could have deemed the property essential because it was a vacant, underutilized property. Indeed, the crux of the issue before the Supreme Court was whether the property was subject to designation under the redevelopment law simply because it was not fully productive. Gallenthin Realty Dev., 191 N.J. at 348. GRD's expert before the Paulsboro Planning Board contended that the property "was not necessary for the BP/Dow Redevelopment Area." Id. at 353 (emphasis added). GRD's expert also noted that a Borough expert's recommendation to designate the property in need of redevelopment "was based exclusively on N.J.S.A. 40A:12A-5(e), not . . . that the property may be an important adjunct to the BP/Dow Redevelopment Area." Ibid. (emphasis added). Hence, GRD's prior position undermines its present arguments.

Second, even if the jury made that first inferential leap, it would also need to infer the property was essential to the port project because of the property's own water and rail access. As noted, the port project's land already had water access directly to the Delaware, and to the same rail spur that passed through GRD's property. Paulsboro could have deemed the property essential to the port project because the property could be used for ancillary purposes — such as providing road access, or providing industrial uses that did not exploit the site's own water and rail access.

Third, even if the jury made those two inferential leaps, it would need to conclude that Paulsboro's demand in 2005 was reflective of market demand, and therefore probative of the property's value, in 2010. Authority witnesses addressed the lasting negative impact of the 2008 recession on property values in April 2010. The witnesses contrasted the 2010 economy with headier times before the recession, and the economic recovery by the time of trial.

Although not a basis for our decision, we also note that the Burzichelli certification was hearsay, and, apparently, inadmissible. The certification was an out of court statement, offered for the truth of the assertion that the property was essential to the redevelopment area. See N.J.R.E. 801(c). The

Authority ultimately hired Burzichelli ten years later,[2] but there is no evidence that when he made the statement in 2005, he did so as an agent of the Authority, so as to qualify as a statement of an agent of a party opponent. <u>See</u> N.J.R.E. 803(b)(4). We are aware of no other exception to the hearsay rule that would have enabled GRD to introduce Burzichelli's certification into evidence for its truth. The fact that the document appeared to be certified did not make it admissible, putting aside the non-compliance with <u>Rule</u> 1:4-4. <u>See</u> <u>Jacobs v. Walt Disney World, Co.</u>, 309 N.J. Super. 443, 454 (App. Div. 1998) (stating that "factual assertions based merely upon 'information and belief' are patently inadequate").

In sum, applying the narrow scope of review applicable to evidentiary rulings in civil trials, we discern no persuasive grounds to set aside the jury's award and the corresponding judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] We separately grant Gallenthin's motion (M-1601-17) to supplement the record with evidence of Burzichelli's subsequent employment.

14                                                    A-2342-15T1