**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4299-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MERVIN R. FITZGERALD, a/k/a
RICHARD FITZGERALD,

     Defendant-Appellant.

_____

Submitted January 30, 2020 – Decided June 1, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-08-0687.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Timothy Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Daniel A. Finkelstein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Mervin R. Fitzgerald appeals from a July 28, 2017 judgment of conviction of first-degree kidnapping, N.J.S.A. 2C:13-1(b), and second-degree robbery, N.J.S.A. 2C:15-1, and the sentence he received for those crimes. We affirm.

I.

The following facts are derived from the record. On December 31, 2012, at approximately 7:00 p.m., two men entered a shoe store in Linden staffed by Denise Santana and Karla Gallardo, both eighteen years old. The men inquired about buying boots, abruptly left the store, and returned a short time later dressed in black, wearing sunglasses and "skully" hats. One of the men pulled out a handgun.

The men instructed Santana and Gallardo to go into the back room of the store and then zip-tied their hands and feet together, leaving them prone on the floor. Gallardo gave the men the combination to the store's safe.

While on the ground, Gallardo looked up when speaking with the men and observed the nose, moustache, and mouth of the man doing a majority of the talking. Santana noticed the men were wearing rubber latex gloves. The men left after accessing the safe, from which approximately $200 was later discovered missing.

A-4299-17T2

After the men left, Santana and Gallardo freed themselves and, along with a customer who had arrived at the store, called the police. At the sales counter, officers found a rubber latex glove later determined to contain defendant's DNA. More than a year after the incident, Gallardo went to the police station where she was presented with a photo array. She identified defendant, recognizing his nose and mustache. She told police the man in the photo was called "Fitz" or "Fritz" by the other assailant during the robbery.

Defendant was arrested and indicted on charges of first-degree robbery, N.J.S.A. 2C:15-1, first-degree kidnapping, N.J.S.A. 2C:13-1(b), second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), third-degree terroristic threats, N.J.S.A. 2C:12-3(b), and fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4). Prior to trial, the State dismissed the weapons charges and the aggravated assault charge.

At trial, defendant presented two alibi witnesses. Roger Blake testified he held a New Year's party on the night of the incident and remembered defendant attending, although he could not identify the precise time he arrived. The defense presented photographs, with defendant in one of them, allegedly taken that night at the party.

3

The second alibi witness, Lisa Gonzalez, testified she drove defendant to Blake's party and remained with him there until approximately 1:00 the next morning. Gonzalez learned of defendant's charges from television news the day after he was arrested. According to her testimony, it was not until about a year before trial that she realized during a conversation with Blake the charges concerned events on the same night as Blake's party. She did not report this information to police.

At trial, the court held a hearing to determine whether the State would be permitted to cross-examine Gonzalez with respect to why she did not speak to police or try to exonerate defendant for about a year after realizing the alleged crimes took place on the night of Blake's party. During the hearing, Gonzalez had the following exchange with an assistant prosecutor:

> Q: Did you go right to the police station then and let them know that you were with Mervin Fitzgerald that night?
>
> A: No.
>
> Q: Why not?
>
> A: I didn't think that was my responsibility to do that.
>
> Q: Didn't you know that you had information that could help him defend against these serious charges?

4

A:   I don't know that would be something though that would be – I'd have to go to the police station.  I thought then it would be going to his lawyer to deal with his defense.

Q:   Well, do you remember when somebody from my office called you, Detective Bario?

A    Yes.

Q    And do you remember she asked you if you had any information about whether you were with Mervin Fitzgerald on December 31st, 2012, and you said you would rather only say what you had to say in court, that you did not want to speak to her?

A    I think I just said that, yeah, that I wanted to – that I was going to testify in court.  I didn't think I was supposed to like – I thought that was testifying twice.

After applying the factors set forth in State v. Silva, 131 N.J. 438 (1993), the court permitted the State to cross-examine Gonzalez as to her prior silence. The judge noted that although she did not reveal her information, Gonzalez: (1) was aware of defendant's charges; (2) knew she had exculpatory information; (3) had a reasonable motive to exonerate defendant; and (4) was familiar with a means to make the information available to police.

Defendant testified he was at Blake's party when the crimes were committed, admitted to being called "Fitz," and admitted to having a criminal

5

record consisting of two prior indictable convictions for drug offenses, a non-indictable conviction for drug paraphernalia, and a municipal conditional discharge. Defendant denied having even been in the store in question, and claimed he was set up by Carlos Lopez, a former employee of the store, because of his romantic relationship with Lopez's wife before and after their marriage. He testified that he and Lopez sometimes used gloves like the one found at the scene when doing construction work together, suggesting Lopez planted the glove with his DNA at the store.

The jury found defendant guilty of first-degree kidnapping and second-degree robbery. At sentencing, the court found aggravating factor two applied. N.J.S.A. 2C:44-1(a)(2) ("[t]he gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance").

In addition, the court found aggravating factor six, N.J.S.A. 2C:44-1(a)(6), "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted;" and aggravating factor nine,

A-4299-17T2

N.J.S.A. 2C:44-1(a)(9), "[t]he need for deterring the defendant and others from violating the law . . . ."  The court did not find any mitigating factors.

Having determined the aggravating factors outweighed the non-existent mitigating factors, the court sentenced defendant to a twenty-year period of incarceration, with an eighty-five-percent period of parole ineligibility, pursuant to N.J.S.A. 2C:43-7.2, on the kidnapping charge and a concurrent eight-year period of incarceration, with an eighty-five-percent period of parole ineligibility, on the robbery charge.

This appeal follows.  Defendant makes the following arguments:

> POINT I
>
> THE TRIAL COURT ERRED BY ALLOWING THE STATE TO CROSS-EXAMINE THE DEFENSE WITNESS CONCERNING WHY SHE DID NOT COME FORWARD EARLIER WITH HER ALIBI TESTIMONY.
>
> POINT II
>
> RESENTENCING IS REQUIRED BECAUSE THE TRIAL COURT IMPERMISSIBLY DOUBLE-COUNTED AND BECAUSE IT FOUND FACTOR SIX WITHOUT ADEQUATE JUSTIFICATION.

II.

We review a trial court's evidentiary rulings with deference.  State v. Hyman, 451 N.J. Super. 429, 441 (App. Div. 2017).  "[T]he decision to admit or

exclude evidence is one firmly entrusted to the trial court's discretion." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010).

"Our Supreme Court, in the context of an alibi witness, has recognized 'situations . . . where the natural response of a person in possession of exculpatory information would be to come forward in order to avoid a mistaken prosecution of a relative or a friend.'" State v. Holden, 364 N.J. Super. 504, 510 (App. Div. 2003) (quoting Silva, 131 N.J. at 446). Doubt may be cast on the truth of a witness's trial testimony when a "witness fails to come forward, when it would have been natural to do so . . . ." Ibid. (quotations omitted).

The Court established a four-prong test to determine whether cross-examination relating to an alibi witness's prior silence is appropriate. Silva, 131 N.J. at 447-48; see also State v. Perez, 304 N.J. Super. 609, 611-13 (App. Div. 1997). This test is satisfied by asking whether:

> [(1)] the witness was aware of the nature of the charges pending against the defendant, [(2)] had reason to know he had exculpatory information, [(3)] had a reasonable motive to act to exonerate the defendant, [and (4)] was familiar with the means to make the information available to law enforcement authorities . . . .
>
> [Silva, 131 N.J. at 447-48 (quotations omitted).]

"The circumstances of every case as revealed during the laying of a proper foundation will reveal what is reasonably natural for an alibi witness to do.

8

When an alibi witness has a close relationship with the accused, a jury can infer that the alibi witness's natural conduct would be to report the alibi to the authorities." Id. at 448. "A witness (unlike a defendant) has no right to refuse to give information to official investigators." Id. at 448 n.1.

Our review of the record in light of these precedents reveals the trial court did not err in its analysis of the Silva factors. Gonzalez knew about defendant's charges after hearing about them on television news the day after his arrest and determined, after a conversation with Blake, that the charges stemmed from the night of the New Year's party. She was a life-long friend of defendant, giving her a motive to act to exonerate him. Further, she was familiar with a means to make defendant's alibi known to police, given that she is a college graduate, has a master's degree, and, according to the trial court's finding, was obviously intelligent. We agree with the trial court's conclusion Gonzalez knew she could alert police or the prosecutor's office about the information she had relating to defendant's whereabouts on the night in question.

We review defendant's sentence for abuse of discretion. State v. Pierce, 188 N.J. 155, 166 (2006). We must affirm a sentence "unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the

record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

The sentencing court must examine the aggravating and mitigating factors enumerated in N.J.S.A. 2C:44-1(a) and (b). Each factor found by the court must be relevant and supported by "competent, reasonably credible evidence." Id. at 72 (quoting Roth, 95 N.J. at 363). The court then must conduct a qualitative balancing of the factors to determine the appropriate sentence. Id. at 72-73. One "reasonable" approach is for the court to begin its analysis in the middle range for the offense at issue and determine whether the factors justify departure above or below the middle range. Id. at 73 (quoting State v. Natale, 184 N.J. 458, 488 (2005)).

"Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime." State v. Lawless, 214 N.J. 594, 608 (2013). To use those elements in formulating the aggravating factors would result in impermissible double-counting. State v. Kromphold, 162 N.J. 345, 353 (2000) (citing State v. Yarbrough, 100 N.J. 627, 633 (1985)); see also Fuentes, 217 N.J. at 74-75 (holding that sentencing courts

"must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense").

"A court, however, does not engage in double-counting when it considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense." State v. A.T.C., 454 N.J. Super. 235, 254-55 (App. Div. 2018) (citing Fuentes, 217 N.J. at 75).

> [In Yarbough], we recognized that facts that established elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence. We reasoned that the Legislature had already considered the elements of an offense in the gradation of a crime. If we held otherwise, every offense arguably would implicate aggravating factors merely by its commission, thereby eroding the basis for the gradation of offenses and the distinction between elements and aggravating circumstances. In the same manner, double-counting of elements of the offenses as aggravating factors would be likely to interfere with the Code's dedication to uniformity in sentencing.
>
> [Kromphold, 162 N.J. at 353 (internal citation omitted).]

Defendant argues the trial court committed two errors at sentencing. First, he contends the court erred in finding aggravating factor six, N.J.S.A. 2C:44-1(a)(6). There is credible evidence in the record supporting the trial court's determination. Defendant has a lengthy criminal history to which he admitted.

Second, defendant argues the court double-counted elements of the first-degree kidnapping offense when finding aggravating factors two, N.J.S.A. 2C:44-1(a)(2), and nine, N.J.S.A. 2C:44-1(a)(9).  We disagree.

When finding aggravating factors two and nine, the trial court relied on the harrowing circumstances suffered by the victims during the commission of defendant's crimes, their ages, the fact that they were alone in the store, and that they were tied up.  None of these facts are elements of first-degree kidnapping.

"A person is guilty of kidnapping if he . . . unlawfully confines another for a substantial period, with any of the following purposes: . . . [t]o facilitate commission of a crime or flight thereafter . . . ."  N.J.S.A. 2C:13-1(b)(1). Kidnapping is a first degree crime unless "the actor releases the victim unharmed and in a safe place prior to apprehension," in which case the offense is a second-degree crime.  N.J.S.A. 2C:13-1(c)(1).

It was appropriate to consider the victims' relative vulnerability as eighteen-year-olds alone at night in a retail establishment.  See State v. O'Donnell, 117 N.J. 210, 219 (1989) ("[w]hen, as here, a victim is so constrained as to make physical resistance virtually impossible, he or she has been rendered vulnerable within the meaning of section 1[(a)](2)"); State v. Faucette, 439 N.J. Super. 241, 272 (App. Div. 2015) (affirming application of aggravating factor

(2) where factor was applied based in part on the victim being a "retail gas station attendant" and "all alone"); State v. Washington, 408 N.J. Super. 564, 581 (App. Div. 2009) (finding judge did not double-count when applying aggravating factor (2) based in part on victim's age).

The trial court also stated that "who could be more vulnerable than a kidnapping victim who is not released unharmed." As noted above, whether or not a victim is released unharmed is a fact that determines the degree of kidnapping. Because defendant did not release his victims unharmed before his apprehension, his offense was one of the first-degree. Our review of the record reveals the court referenced this fact in passing when discussing the victims' vulnerability generally, and we conclude any error by the court in referring to an element of the first-degree offense was not material to its sentencing analysis, given the significant evidence supporting aggravating factors two and nine.

Finally, the sentence imposed on defendant is within the statutory range for his offenses and does not shock the conscience of this court. He and his cohort terrorized two teenage victims, tying them up at gunpoint, and leaving them bound on the floor in an unlocked building that anyone could have entered.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-4299-17T2